YELLOW PAGE CONSULTANTS, INC. *v.* OMNI HOME HEALTH SERVICES, INC.
(AC 18734)

Mihalakos, Zarella and Pellegrino, Js.

---

Argued April 5—officially released August 8, 2000

*Linda L. Morkan*, with whom, on the brief, were *Frank F. Coulom, Jr.*, and *Andrea Barton Reeves*, for the appellant-appellee (plaintiff).

*Sebastian N. Giuliano*, with whom was *Nella R. Rafala*, for the appellee-appellant (defendant).

*Opinion*

ZARELLA, J. The plaintiff in this contract action, Yellow Page Consultants, Inc., appeals from the judgment rendered after a trial to the court in favor of the defendant, Omni Home Health Services, Inc. On appeal, the plaintiff claims that the trial court improperly (1) disregarded undisputed evidence in arriving at factual findings, (2) decided the case on the basis of a counterclaim that alleged fraud, which had been dismissed, and (3) ruled that there was no meeting of the minds and, therefore, no valid contract between the parties. The defen-

dant cross appeals, claiming that the court improperly denied recovery on its counterclaim that alleged violations of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., in view of the court's finding that the plaintiff misled the defendant and withheld information from it. On the defendant's cross appeal, we affirm the judgment of the trial court. On the plaintiff's appeal, we reverse the judgment and remand the case for a new trial.

The following facts and procedural history are relevant to the resolution of this appeal. The plaintiff is a consulting company doing business with companies interested in reducing the cost of advertising in yellow page directories. In an August, 1993 letter to the defendant, the plaintiff indicated that it had "several ideas that will result in significant savings in your yellow page advertising."

In 1994, the plaintiff entered into a consulting agreement with the defendant to develop and implement a more appropriate yellow pages advertising strategy for the defendant in exchange for 50 percent of the savings generated over a three year period. The agreement was signed by the defendant's vice president, Guy J. Tommasi, Jr., and the plaintiff's president, David Ford. The agreement provided that if the defendant did not experience any savings during the term of the three year agreement, it would not owe anything to the plaintiff. Additionally, the agreement provided that the defendant could accept or reject any of the plaintiff's suggestions. The plaintiff initially performed on the agreement, and the defendant paid in full for the first year of the contract.[1] The first year of savings resulted from recommendations by the plaintiff, such as switching from a larger three-eighths page display to a smaller two inch column listing.

---

[1] The total amount of savings in the first year was $34,404, and the defendant paid the plaintiff its share of the savings in February and March of 1994.

In January, 1995, during the second year of the agreement, Tommasi sent a letter to Southern New England Telephone Company, indicating that the plaintiff was the defendant's consultant. With the letter, Tommasi enclosed an outline of the listings that the defendant wanted in the various directories. Also in January, 1995, the plaintiff sent the defendant a letter that documented the defendant's savings, as it had done in the first year of the agreement. In March and April of 1995, the defendant sent payments totaling approximately half of the $18,949 it owed the plaintiff under the agreement on the basis of a total savings of $35,754. The defendant refused to make any further payments.

The plaintiff subsequently commenced this action by way of a complaint dated June 5, 1996, alleging that the defendant breached a contract with the plaintiff.[2] The defendant filed an answer, which admitted the existence of the agreement, and a special defense alleging nonrenewal for the second and third years of the agreement. In addition, the defendant filed three counterclaims alleging breach of contract, fraud and violations of CUTPA. The case was tried in April, 1998. At the end of the evidence, the court dismissed the breach of contract and fraud counts of the counterclaim.[3]

In June, 1998, the court issued its memorandum of decision, finding against the plaintiff on its complaint and against the defendant on its special defense and CUTPA claims. In its memorandum of decision, the

[2] The plaintiff claimed breach of contract and sought compensatory damages, attorney's fees, interest and costs.

[3] The court's memorandum of decision did not address the dismissal of these claims short of the statement, "The court dismissed counts one and two of the counterclaim."

At trial, the defendant's counsel admitted to not having provided sufficient evidence of fraud to support either the breach of contract or fraud counterclaims. He stated, "[T]here were no fraud representations proved on the first or second count, Your Honor. I don't know that I would make a major issue out of that."

court concluded that the plaintiff had violated its duty to disclose to the defendant information on how to reduce the directory advertising expense. Additionally, the court found that the plaintiff had not shown the "customer ways to save money," as was required under the automatic renewal provision of the agreement. The court's memorandum of decision discussed the legal principles of fraud and indicated that the plaintiff did not "sustain its burden of proof in regard to the existence of a legal contract." In addressing the defendant's special defense and CUTPA counterclaim, the court indicated only that the defendant had not met its burden of proof. This appeal and cross appeal followed.

While this appeal was pending, the plaintiff filed a motion requesting an articulation of the court's conclusion that no legal contract existed and the basis for its finding that the plaintiff had committed fraud despite the dismissal of the defendant's fraud counterclaim. The court denied the motion, and the plaintiff subsequently filed a motion for review. This court granted the motion for review and ordered the trial court to articulate the basis for its conclusion that no "legal contract" existed. The court thereafter articulated that due to the plaintiff's failure to disclose to the defendant the method by which savings would be generated, "There was never a meeting of the minds in regard to this 'contract.'" Fraud was not mentioned in the articulation. The defendant did not seek articulation from the court with respect to the decision on the special defense and CUTPA counterclaim.

The plaintiff claims that the court improperly ruled that no legal contract existed because of alleged fraud on the part of the plaintiff and that there was no "meeting of the minds." We agree.[4]

---

[4] The plaintiff raises additional issues that we need not consider, as this issue is dispositive of its appeal.

First, we set forth our standard of review. "If the factual basis of the court's decision is challenged, our review includes determining whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Keefe* v. *Norwalk Cove Marina, Inc.*, 57 Conn. App. 601, 606, 749 A.2d 1219, cert. denied, 254 Conn. 903, 755 A.2d 881 (2000). "With regard to the trial court's factual findings, the clearly erroneous standard of review is appropriate." *Empire Paving, Inc.* v. *Milford*, 57 Conn. App. 261, 265, 747 A.2d 1063 (2000). "The trial court's legal conclusions are subject to plenary review. [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . [T]he interpretation of the contract is a matter of law and our review is plenary." (Citation omitted; internal quotation marks omitted.) Id.

The court's finding that no legal contract existed on the basis of the plaintiff's fraudulent conduct is not supported by the record for two reasons. Practice Book § 10-50 requires that "[f]acts which are consistent with [the plaintiff's] statements but show, notwithstanding, that the plaintiff has no cause of action, must be specially alleged. Thus . . . fraud . . . must be specially pleaded . . . ." The defendant did not interpose any special defenses to the contract of fraud in the inducement and therefore, pursuant to our rules, cannot attempt to prove fraud in the avoidance of the contract. See *Connecticut National Bank* v. *N. E. Own II, Inc.*, 22 Conn. App. 468, 475, 578 A.2d 655 (1990). Parties must accept the outcome of their bargain; they cannot rely on the court to rescue them from decisions they may later regret. See *Angelo Tomasso, Inc.* v. *Armor*

*Construction & Paving, Inc.,* 187 Conn. 544, 560–61, 447 A.2d 406 (1982). The only allegation of fraud before the court was the defendant's counterclaim, which was dismissed by the court at the end of the evidence. Neither side claimed fraud in the inducement.

The court in its articulation also stated that no "legal contract" existed because there was no "meeting of the minds." This issue of the meeting of the minds was not raised by the defendant in its pleadings at trial or in its posttrial brief. In fact, in its answer, the defendant admitted the existence of a contract and filed no special defense in avoidance of the contract.

"Pleadings have their place in our system of jurisprudence. While they are not held to the strict and artificial standard that once prevailed, we still cling to the belief, even in these iconoclastic days, that no orderly administration of justice is possible without them. . . . The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. . . . It is fundamental in our law that the right of a [party] to recover is limited to the allegations in his complaint. . . . A [party] may not allege one cause of action and recover on another. Facts found but not averred cannot be made the basis for a recovery. (Citations omitted; internal quotation marks omitted.) *Moore* v. *Sergi,* 38 Conn. App. 829, 841–42, 664 A.2d 795 (1995). The court is not permitted to decide issues outside of those raised in the pleadings. In the present case, the court improperly held that there was no meeting of the minds because the issue did not appear in any of the pleadings. Additionally, it is well established jurisprudence that the pleadings serve to "frame the issues before a trial court." *Doublewal Corp.* v. *Toffolon,* 195 Conn. 384, 390, 488 A.2d 444 (1985). In the present matter, the plaintiff alleged in the complaint dated June 5, 1996, that the parties entered into a contract. In its

answer dated August 29, 1996, the defendant admitted to entering into the contract.[5]

The defendant did not seek an articulation of the court's denial of recovery on the CUTPA counterclaim. Therefore, we have no basis to review the defendant's cross appeal. Additionally, we decline to afford review due to an inadequate record. "It is the responsibility of the [cross] appellant to provide an adequate record for review. . . ." Practice Book § 61-10.

On the appeal, the judgment is reversed and the case is remanded for a new trial; on the cross appeal, the judgment is affirmed.

In this opinion the other judges concurred.

---

[5] The complaint stated in relevant part:

"4. On or about January 19, 1994, the plaintiff and the defendant entered into a consulting agreement whereby the plaintiff agreed to provide consulting services in consideration of defendant's promise to pay the plaintiff 50% of any yearly savings over a three-year period on defendant's yellow page advertising expenses."

The defendant's answer stated in relevant part:

"4. The defendant *admits* the allegations of Paragraph 4 of the Plaintiff's Complaint, with the exception of the allegation that the subject contract was for three years, which allegation is denied." (Emphasis added.)