ELM STREET BUILDERS, INC. *v.* ENTERPRISE PARK
CONDOMINIUM ASSOCIATION, INC., ET AL.
(AC 19994)

Spear, Dranginis and Hennessy, Js.

---

Argued January 24—officially released June 12, 2001

*Nicole M. Fournier*, with whom, on the brief, was *Hugh F. Keefe*, for the appellant (plaintiff).

*Martha Anne Wieler*, for the appellees (defendants).

*Opinion*

SPEAR, J. The plaintiff, Elm Street Builders, Inc., appeals from the judgment of the trial court, rendered in favor of the defendants, Enterprise Park Condominium

Association, Inc. (association), and the record owners of the twenty-one condominium units,[1] after a trial to the court on its three count complaint alleging breach of contract, slander of title and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The plaintiff claims that the court improperly (1) concluded that the defendants did not breach their contractual and statutory duties not to interfere with the plaintiff's exercise of its development rights, (2) refused to credit relevant evidence and testimony and (3) dismissed the plaintiff's slander of title and CUTPA claims.[2] We affirm the judgment of the trial court.

In its memorandum of decision, the court set forth the following facts and procedural history. On January 13, 1989, Stephen Barbara, the president of Enterprise Park Group, Inc. (Enterprise Park), a Connecticut cor-

[1] The record owners of the twenty-one units, as listed in the complaint dated April 2, 1996, are Octagon Associates; Joseph Levine; Burton Firtel and Barry Saunders, doing business as Barbur Associates; Elio Floriano and Mario Floriano; Joseph Nuzzo and Paula Milone-Nuzzo; Abby A. Miller, trustee of the David Francis Nelson Trust; Paul J. Avitable; Michael Nero and Gerardo Nero; and Donald J. McPhee and Esther McPhee.

[2] The plaintiff also claims that the court improperly declined to decide when the phase two development rights expired. Although this issue was included in the plaintiff's preliminary statement of the issues, it was not included in the statement of issues presented in the plaintiff's appellate brief. Moreover, the brief fails to provide any legal authority or analysis on the alleged impropriety of the trial court's ruling. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . *Raymond* v. *Rock Acquisition Ltd. Partnership*, 50 Conn. App. 411, 420, 717 A.2d 824 (1998); see also *State* v. *Leary*, 51 Conn. App. 497, 499, 725 A.2d 328 (1999); *Blakeney* v. *Commissioner of Correction*, 47 Conn. App. 568, 586, 706 A.2d 989, cert. denied, 244 Conn. 913, 713 A.2d 830 (1998). Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Internal quotation marks omitted.) *In re Brandon W.*, 56 Conn. App. 418, 425, 747 A.2d 526 (2000). Accordingly, we decline to review the plaintiff's claim.

poration that is not a party to this litigation, executed a document entitled Declaration of Enterprise Park (declaration). On January 18, 1989, the declaration was recorded in the town of Hamden land records.

The purpose of the declaration was to create a common interest community pursuant to the provisions of General Statutes § 47-200 et seq., the Common Interest Ownership Act. The community was planned as a commercial condominium development consisting of two phases, with Enterprise Park as the developer. Phase one consisted of four buildings containing twenty-one units. Phase two consisted of the development rights to six additional buildings containing twenty-five units. The declaration permitted Enterprise Park to exercise the phase two development rights at any time, but not more than seven years after the initial declaration was recorded. The declaration also created the association to administer the affairs of the common interest community.

On the day that the declaration was executed, Enterprise Park sold a phase one unit by warranty deed to the defendants, Donald J. McPhee and Esther McPhee. The McPhee deed was recorded on January 18, 1989, the same date as the declaration. In the next two months, Enterprise Park sold seven additional units to various individual defendants by way of warranty deeds.

On July 31, 1990, Barbara, on behalf of Enterprise Park, executed a "Modification of Declaration of Enterprise Park By Enterprise Park Group, Inc., The Declarant." The modification was recorded in the town of Hamden land records on August 2, 1990. The modification added a completed signatory page to the previously recorded declaration, which inadvertently had contained a signatory page without any signatures. The declaration itself was not rerecorded. The modification stated that page I-34, the signatory page, "does not show

the due execution of said Declaration thereon, and is hereby corrected, modified, replaced and/or substituted by the attached Page I-34 to reflect the due execution of said Declaration." The substituted page was the same page included in the declaration recorded on January 18, 1989, but the new page contained signatures and dates indicating that the document was executed on January 13, 1989. The modification also stated: "Intending hereby to correct the Declaration as above stated not to otherwise affect any other page or Section of said Declaration."

Thereafter, Enterprise Park sold the remaining phase one units to the other individual defendants some time prior to August 21, 1991. On that day, the rights held by Enterprise Park passed to New England Savings Bank by virtue of a judgment of foreclosure. On January 12, 1993, the bank quitclaimed to the plaintiff for $76,000 "those special declarant rights and declarant development rights reserved . . . in . . . the Declaration . . . recorded . . . on January 18, 1989 at Volume 977, Page 304, re-recorded for purposes of proper execution at Volume 977, Page 342 . . . ."

During the next three years, the plaintiff did not exercise its development rights. Lawrence Brophy, president of the plaintiff, testified that the plaintiff's inaction was due to a "very sluggish" real estate market. On February 1, 1996, counsel for the plaintiff wrote a letter to the defendant Joseph Levine, an officer of the association, setting forth a lengthy legal argument as to why the seven year development period expired on August 2, 1997, rather than on January 18, 1996, a date that already had passed. In the letter, the plaintiff expressed its understanding that the association "and/or its members have taken the position that the development rights held by the (plaintiff) have expired . . . ." The letter stated that the plaintiff would commence litigation against the association and the individual unit owners,

and seek monetary damages caused by any delay or cost "occasioned by the position taken by the association," as well as multiple damages for unfair trade practices and bad faith on the part of the association. The letter also stated that legal action would be commenced against the association and its members if they did not respond within ten days.

Levine, in his capacity as an association officer, responded by letter dated February 1, 1996. The letter stated in part: "We do not have any intention at the present time of becoming involved in any litigation regarding the development rights your client has. We agree that it would benefit the Association to have your client develop this property and create a workable relationship between us."

After receiving Levine's letter, counsel for the plaintiff prepared a document entitled "Agreement Re: Ratification of Development Rights," which he sent to Levine on February 2, 1996, with a request that the association sign it. The agreement stipulated that the plaintiff's development rights would expire on August 2, 1997. Although the document did not call for the signature of any of the individual defendants, the cover letter again stated that legal action would be taken against the association and all of the unit owners if the association did not execute the agreement. None of the defendants signed the agreement.

The plaintiff commenced the present action on April 4, 1996. In its complaint, the plaintiff claimed that because of uncertainty as to the expiration date of the phase two development rights, it could not obtain financing to proceed with the development. It further claimed that had the proposed stipulation between the parties been executed, the expiration date for the development rights would have been clarified, and the plaintiff could have proceeded with the project and earned

substantial profits. Instead, the unused development rights expired. The plaintiff claimed that the association's failure to execute the stipulation constituted a breach of its contractual obligations, slander of the plaintiff's title and a violation of CUTPA, resulting in substantial damage to the plaintiff. The complaint requested a declaratory judgment holding that the seven year period for the exercise of the phase two development rights be deemed to expire on August 2, 1997. The complaint also applied for preliminary and permanent injunctive relief prohibiting any of the defendants from interfering with the plaintiff's exercise of its development rights or the securing of financing or the construction of units.

The court ordered that a hearing on the application for the temporary injunction be held on May 13, 1996. The hearing was not held.[3] On that day, however, the court granted the defendants' motion to transfer the case to another judicial district. Although Brophy later testified that had the issue of the seven year expiration date been resolved in 1996, the plaintiff would have had sufficient time to exercise its development rights prior to August 2, 1997, the court files do not reflect any further efforts by the plaintiff to request a hearing on its application for a temporary injunction or its request for a declaratory judgment. The pleadings were closed on December 10, 1997.

The case was tried to the court in May, 1999. The complaint requested various forms of relief, but the claims at trial and in the plaintiff's posttrial brief were reduced to a claim for damages on the ground that the relief requested flowed from the defendants' alleged breach of duties to the plaintiff in refusing to execute the "Agreement Re: Ratification of Development Rights." Accordingly, the court concluded that there

---

[3] We do not find evidence in the record as to why the hearing was not held.

was no need to decide whether the plaintiff's development rights expired on January 18, 1996, or August 2, 1997. On August 24, 1999, the court rendered judgment for the defendants, and this appeal followed.

I

The plaintiff first claims that the court improperly concluded that the defendants did not breach their contractual duty not to interfere with the plaintiff's exercise of its development rights, and did not breach their contractual and statutory duty of good faith and fair dealing. We disagree.

We begin our analysis with a discussion of the appropriate standard of review. In an action to recover damages for breach of contract, "[t]he trial court's legal conclusions are subject to plenary review. [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *Yellow Page Consultants, Inc.* v. *Omni Home Health Services, Inc.*, 59 Conn. App. 194, 199, 756 A.2d 309 (2000).

The court concluded that the defendants did not breach their contractual duty to the plaintiff arising from §§ 8.11 and 8.4 of the declaration, which obligate the defendants not to interfere with or diminish any "special declarant right,"[4] including the phase two development rights. The court also concluded that the defendants did not breach their statutory obligation to act in good faith in the performance of their duties as members of the condominium association.

The duty of good faith under General Statutes § 47-211 requires that "[e]very contract or duty governed

---

[4] The declaration itself is not included in the record. All facts regarding declaration provisions are based on testimony at trial and the findings of fact in the court's August 24, 1999 memorandum of decision.

by [the Common Interest Ownership Act] imposes an obligation of good faith in its performance or enforcement." The common-law duty of good faith and fair dealing implicit in every contract requires that "neither party [will] do anything that will injure the right of the other to receive the benefits of the agreement. . . . Essentially it is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended." (Citations omitted; internal quotation marks omitted.) *Middletown Commercial Associates Ltd. Partnership* v. *Middletown*, 53 Conn. App. 432, 437, 730 A.2d 1201, cert. denied, 250 Conn. 919, 738 A.2d 657 (1999).

Here, the conduct alleged to be a violation of the defendants' duties and obligations is the failure of the association to execute a single document. The court concluded that although the defendants had obligations under the declaration, the duty not to interfere with or diminish a special declarant right did not require that the association execute a stipulation as to when the phase two development rights expired. We agree with the court that Enterprise Park, the original declarant, rather than the defendants, created the alleged ambiguity as to when the development rights expired. Moreover, we know of no provision in the declaration that requires or permits either the association or the individual defendants to enter into a stipulation to resolve possible ambiguities in its language or terms. Furthermore, the proposed stipulation called for the association's signature, not for the signatures of the individual defendants. We, accordingly, agree with the court that the association's refusal to sign the proposed stipulation did not interfere with the plaintiff's development rights, and did not constitute a breach of the association's duty of good faith and fair dealing or that of the individual defendants. We thus find that the conclusions of the

court are legally and logically correct, and properly supported by the facts.

The plaintiff argues that the defendants' refusal to act constituted "interference," and that the duty of good faith and fair dealing required their active cooperation in clarifying when the development rights expired. The plaintiff claims that Connecticut courts and the Restatement (Second) of Contracts recognize that the duty of good faith and fair dealing requires that the parties be faithful to their reasonable expectations and agreed common purpose, and that bad faith may consist of inaction. It claims that the defendants had an incentive for adopting a posture of passive resistance because the phase two development rights would revert to the association and its members after the rights had lapsed. It further claims that the individual defendants were motivated to resist signing the document by their concern that the phase two buildings would compete with the phase one buildings and that the association had campaigned for various uncompleted phase one improvements in exchange for its cooperation. The plaintiff described the defendants' conduct as a "shakedown," which ultimately resulted in their unjust enrichment. We disagree.

The following facts are necessary to our resolution of this issue. At trial, Robert Lietze, the plaintiff's attorney in February, 1996, testified that Levine had told him that he would have signed the proposed stipulation in his capacity as an officer of the association if the association members had approved it. Lietze also testified that the association members had requested consideration in the form of landscaping, lighting and sidewalk improvements that had not been completed in phase one, and which the plaintiff was not legally required to provide, in exchange for their approval. He testified that negotiations then broke down.

Levine followed with testimony that the association initially did not sign the proposed stipulation because it was not represented by legal counsel, did not want to incur any costs and saw no reason to sign it at that time. He testified that, when the plaintiff contacted him on February 1, 1996, he believed that the development rights already had expired and that neither he, nor the other association members, were aware that the documents filed in 1989 may have been deficient. He agreed with Lietze, however, that the association refused to sign the stipulation because the plaintiff did not comply with the association's request to complete the phase one improvements. Levine nonetheless testified that the association never took a formal vote that it wanted to keep the plaintiff from building phase two and never took a formal position as to when the development rights expired.

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." 2 Restatement (Second), Contracts, Good Faith and Fair Dealing § 205, p. 99 (1981). "Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." Id., comment (d), pp. 100–101.

"To prove a claim for bad faith under Connecticut law, the plaintiffs [are] required to prove that the defendants engaged in conduct design[ed] to mislead or to

deceive . . . or a neglect or refusal to fulfill some duty or some contractual obligation not prompted by an honest mistake as to one's rights or duties . . . . [B]ad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity . . . it contemplates a state of mind affirmatively operating with furtive design or ill will. . . . Moreover, [b]ad faith is an indefinite term that contemplates a state of mind affirmatively operating with some design or motive of interest or ill will." (Citation omitted; internal quotation marks omitted.) *Chapman* v. *Norfolk & Dedham Mutual Fire Ins. Co.*, 39 Conn. App. 306, 320, 665 A.2d 112, cert. denied, 235 Conn. 925, 666 A.2d 1185 (1995).

Here, the plaintiff has failed to establish that the association's refusal to sign the proposed stipulation and the alleged lack of cooperation by the individual defendants were motivated by bad faith. The record contains no evidence that the defendants were involved in a "shakedown" of the plaintiff to obtain the development rights for themselves. Although Lietze and Levine testified that discussions broke down when the plaintiff would not agree to completing the phase one improvements, the impasse that appears to have developed does not rise to the level of a "shakedown." Levine's letter stated that the association would *benefit* from having the plaintiff develop the property and from establishing a "workable relationship" with the plaintiff. The association also never took a formal vote that it wanted to keep the plaintiff from building phase two and never adopted a formal position as to when the development rights expired. In addition, we know of no testimony by any party that referred to the fact that either the association or the individual defendants wanted to exploit the alleged ambiguity in the declaration to their financial advantage. We therefore conclude that the defendants did not engage in any conscious wrongdoing

or conduct designed to mislead or deceive the plaintiff, were not motivated by ill will or furtive design and, thus, cannot be said to have acted in bad faith by refusing to sign the proposed stipulation.

## II

The plaintiff next claims that the court improperly refused to credit evidence and testimony offered by the plaintiff on the issue of damages. Because we concluded in part I that the defendants did not breach their duty not to interfere with or diminish the plaintiff's exercise of the phase two development rights, we do not reach the issue of damages.

## III

The plaintiff finally claims that the court improperly rejected its slander of title and CUTPA claims, both of which were based on the defendants' failure to sign the proposed stipulation. We disagree.

As we previously stated, our standard of review when the legal conclusions of the trial court are challenged is plenary, and requires us to determine whether the conclusions reached are legally and logically correct and whether they find support in the facts set forth in the memorandum of decision. *Yellow Page Consultants, Inc.* v. *Omni Home Health Services, Inc.*, supra, 59 Conn. App. 199.

## A

The plaintiff first claims that the court improperly determined that it failed to prove the essential elements of a slander of title claim. We disagree.

"A cause of action for slander of title consists of the uttering or publication of a false statement derogatory to the plaintiff's title, with malice, causing special damages as a result of diminished value of the plaintiff's property in the eyes of third parties. The publication

must be false, and the plaintiff must have an estate or interest in the property slandered. Pecuniary damages must be shown in order to prevail on such a claim." 50 Am. Jur. 2d, Libel and Slander § 554 (1995); see also *Frank Mercede & Sons* v. *Tischler Und Sohn*, Superior Court, judicial district of Stamford-Norwalk, Docket No. 172470 (December 2, 1999).

Here, where the claim is based on the defendant's refusal to sign an agreement rather than an affirmative act, the plaintiff has failed to prove at least two of the essential elements of a slander of title claim, namely, a "statement" made with "malice." Accordingly, we conclude that the court's ruling was legally and logically correct, and was properly supported by the facts.

The plaintiff suggests that a claim for slander of title does not require proof that the defendants made statements with malice in disparagement of its title. The plaintiff relies on W. Prosser & W. Keeton, Torts (5th Ed. 1984), and 3 Restatement (Second), Torts, Disparagement of Property-Slander of Title § 624, pp. 342–45 (1977), for the proposition that modern commentators note that slander of title is only one species of a broader class of tort claims generally categorized as "injurious falsehood." The plaintiff argues that injurious falsehood may be claimed when a party refuses to speak but has a contractual duty to do so, and that malice may take the form of improper or unjustifiable motive. The plaintiff suggests that both are present in this case. We do not agree.

The plaintiff mischaracterizes the positions of the commentators on which he relies because both point out that one of the necessary elements of a claim for injurious falsehood is publication, which is not present here. See W. Prosser & W. Keeton, supra; see also 3 Restatement (Second), supra, § 624, pp. 342–45. Moreover, the plaintiff provides no case law or other legal

support for its argument that "refusal to speak" and "improper motive" can be substituted for the elements of a "statement" made with "malice" in a claim for slander of title. Accordingly, we conclude that the ruling of the court was legally and logically correct, and that the court properly rejected the plaintiff's slander of title claim.

B

The plaintiff also claims that the court improperly concluded that it failed to prove the existence of an "unfair practice" under CUTPA. The plaintiff bases its CUTPA claim on the allegation that the defendants wrongfully refused to carry out their contractual duty to sign the proposed stipulation. Because we concluded in part I that the defendants did not breach their contractual duty, the plaintiff's CUTPA claim necessarily must fail.

The judgment is affirmed.

In this opinion the other judges concurred.