[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION AFTER TRIAL
On February 23, 1999, the plaintiff, Michael Agnes, brought suit against the defendants, William Grem and Logan's Restaurant, Inc. d/b/a Logan's Air One Restaurant (Logan's), alleging that he sustained personal injuries as the result of an incident that occurred at Logan's in the late hours of June 14 and the early morning hours of June 15, 1996. The first count of the pending complaint presents a Dram Shop action against Logan's, pursuant to General Statutes § 30-102. The second count alleges an intentional assault and battery against Grem. The third count alleges negligence against both Grem and Logan's.
On April 13, 1999, Grem filed an answer, asserting special defenses and a counterclaim. The special defenses are based on statute of limitations issues related to General Statutes § 52-584, and accidental failure of suit issues related to General Statutes § 52-592; reckless contribution to the incident on Agnes's part; Agnes's assumption of the risk; and self-defense. Grem's counterclaim alleged in the first count that he sustained injuries as the result of Agnes's negligence; in the second count, he alleged that these injuries were caused by Agnes's recklessness. On June 4, 1999 Agnes filed special defenses which address Grem's counterclaims.
The plaintiff and defendant Grem tried these matters to the court on August 22, 24, 25 and 29, 2000 and concluded the proceedings on March 23, 2001.[1] Both individual parties were represented by skilled and experienced counsel who conducted vigorous direct and cross-examination of the witnesses and submitted thorough, comprehensive trial briefs in addition to providing oral argument at the conclusion of the evidence.
After due consideration of the issues and evidence presented in this case, including the testimony of the witnesses and the submission of the numerous exhibits, and having reflected upon the parties' legal arguments, the court finds all operative issues in favor of the plaintiff. Accordingly, the court herein awards fair, just and reasonable damages to Michael Agnes, pursuant to the applicable principles of law.
 I PROCEDURAL HISTORY
The following procedural history is necessary for disposition of the matters before this court.
Agnes originally filed a complaint against Grem and Logan's on or about February 25, 1997.[2] Grem answered on or about May 25, 1997, submitting special defenses and a counterclaim to the court. CT Page 8780 Subsequently, the present matter was assigned to the hearings in damages calendar. On three separate occasions the plaintiff ostensibly failed to appear at scheduled hearings. On August 6, 1998, the court, Berger, J., dismissed the complaint. Agnes did not move to open this dismissal.
On February 23, 1999, two years after filing the original cause of action, Agnes filed a second three-count complaint, which is the subject of the current litigation. The factual allegations relating to the plaintiff's claims of liability on the part of Grem and Logan's remained virtually the same. However, all three counts of Agnes's new complaint state that he has brought the new action pursuant to § 52-592 of theConnecticut General Statutes. . . ." (Emphasis in the original.) (Complaint dated February 23, 1999.)
 II FINDINGS OF FACT
At trial, the court received documentary evidence and heard testimony from Linda Scezla, Agnes, John Anderson, Dean Threlfall and Grem. The court has carefully considered all of this evidence according to the standards required by law.[3] Upon such consideration, the court finds that the following facts were proved by a preponderance of the evidence:[4]
Agnes was born on July 30, 1961, and was 39 years old at the time of trial. In 1996, Agnes was employed as a plumbing construction supervisor and foreman. Grem was born on July 4, 1954, and was forty six years old at the time of trial. In 1996, Grem was employed as a corporate electrician.
Accompanied y Threlfall, his friend and co-worker, Grem drove to the Chowder Pot Restaurant in Hartford in the early evening hours of June 14, 1996. They arrived at the Chowder Pot, where Grem knew a few people, and remained there participating in the "happy hour" for four to five hours. While there, Grem was served and consumed at least six drinks of Tanqueray gin and tonic, by his own admission. Threlfall was also served and consistently consumed alcoholic beverages during this period. Then, Grem and Threlfall decided to go to Logan's Air One Restaurant for a nightcap. As they determined that Threlfall was too intoxicated to operate a motor vehicle, it was decided that Grem would drive to Logan's. They arrived there at approximately 12:30 a.m. on June 15, 1996. They sat at the bar, where Grem was served and consumed at least two additional alcoholic beverages, by his own admission. Threlfall continued drinking, as well. CT Page 8781
Agnes arrived at Logan's between 12:15 a.m. and 12:30 a.m. on June 15th, to await the arrival of his friend, Scelza.[5] Agnes also sat at the bar. Sometime near 1:00 a.m., Scelza arrived at Logan's and approached Agnes. For some unspecified reason, Grem either made some audible profane and defamatory comment about Scezla or her manner of dress, or he derisively laughed at her soon after her arrival. Without rancor or aggression, Agnes asked that Grem apologize to Scezla for his rude remarks. Grem did not comply.
Shortly thereafter, Agnes made a decision to leave Logan's with Scelza because, in his opinion, Grem appeared to be very intoxicated, was threatening them, and because Agnes wanted to avoid confrontation. As he and Scelza proceeded to leave, he turned, at which point Grem suddenly and without warning or provocation, came from behind the pair and struck Agnes with great force on the left side of the top of his head near his hairline. Grem carried out his assault using a small, bottom-heavy "rocks glass" in which a drink had been delivered at the bar. This "rocks glass" had a circular-shaped bottom edge. Agnes did not observe who assaulted him, was unable to protect or defend himself, and immediately began to slump to the ground. Scelza, however, had seen the incident occur. She credibly testified that the glass broke at the time of impact, and that both Agnes's head and the assailant's hand were immediately covered with blood.
Agnes was transported by ambulance from Logan's to Hartford Hospital, where he was examined and treated in the emergency department commencing at 2:20 a.m. on June 15th. Upon examination, he was found to have sustained a 1 cm deep, 5 cm long linear laceration to the left side of the temporal region of his head. Multiple sutures were required to close the wound. A permanent raised, indurated scar approximately 2.2 cm in length remains on Agnes's forehead, extending in a curvilinear pattern for another 3.1 cm in length into his hairline, and measuring approximately 0.3 to 0.4 cm in width. The entire scar maintains a curved shape, similar to that of the bottom edge of a "rocks glass." Agnes continues to suffer from intermittent headaches and sensitivity to cold in the region of this injury, with pain and irritation in the scar area itself. This scar is not amenable to plastic surgical revision. In obtaining treatment for this laceration, Agnes incurred expenses for ambulance transportation in the amount of $308.00; $290.27 for emergency room and hospital care; and $250.00 for valid plastic surgery consultation concerning the potential for ameliorating the effects of the scar. His medically related economic damages thus total $848.27.
Immediately prior to the injury, Agnes worked as a commercial construction plumber. He was unable to work for two weeks after the incident. Following this hiatus, he was able to return to his usual CT Page 8782 occupation, which customarily mandates the wearing of a "hard hat" on construction job sites. Wearing the hard hat, however, causes pain, irritation and numbness to Agnes's scalp in the area of the scarring that resulted from Grem's assault.
Grem also suffered injury in this incident. By forcefully bringing the "rocks glass" against Agnes's head, injury was caused to his right, dominant hand. Thereater, Threlfall drove Grem to Hartford Hospital, where he was examined and treated in the emergency room commencing at 1:56 a.m. on June 15th. Grem was found to have a 5 cm irregular laceration to the right palm, more than 1 cm deep, with severance or partial severance of several tendons and nerves serving the hand and its fingers, along with a small laceration to the fourth finger on that hand. On June 20, 1996, Grem underwent surgery at Hartford Hospital to repair his damaged nerves and tendons. Grem successfully completed a post-operative course of occupational hand therapy, and was allowed to resume light duty work three weeks following the incident, with expected progression to regular duty work as tolerated. On January 16, 1997, he underwent reconstructive surgery on the hand to address the adhesions and nerve scarring that had developed after the first surgery. Grem was required to miss a month of work while recovering from this reconstruction. Having elected not to pursue additional nerve surgery, Grem sustained a fifty per cent permanent partial disability to his right hand. Grem incurred hospital expenses in the amount of $2402.05; and further incurred surgically related expenses in the amount of $10,775.00. His medically related economic damages thus total $13,177.05.
 III AGNES'S COMPLAINT
For clarity, the court will discuss the implications of the Second count of Agnes's complaint dated February 23, 1999,[6] prior to addressing the First count.
 A COUNT TWO — INTENTIONAL ASSAULT AND BATTERY
The second count of Agnes's complaint alleges an intentional assault and battery against Grem. Grem's special defenses and counterclaims are discussed in Parts IV. and V., below. Having considered the evidence in its entirety, including the evidence related to Grem's special defenses, the court finds the issues of intentional assault and battery in favor of Agnes. CT Page 8783
In evaluating Agnes's claim of intentional assault and battery by Grem, the court has observed the principles of law which are generally applicable to such matters. "An actor is subject to liability to another for battery if(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." (Internal quotation marks omitted.) Alteiri v. Colasso, 168 Conn. 329, 334 n. 3, 362 A.2d 798
(1975), quoting 1 Restatement (Second), Torts § 13 (1965). Our law acknowledges the various degrees of intentionality that are attributable to tortious assault and battery. "[A]n actionable assault and battery may be one committed willfully or voluntarily, and therefore intentionally; one done under circumstances showing a reckless disregard of consequences; or one committed negligently." (Internal quotation marks omitted.) Markey v. Santangelo, 195 Conn. 76, 78, 485 A.2d 1305 (1985). "Not only the action producing the injury but the resulting injury must be intentional. . . . The intentional injury aspect may be satisfied if the resultant bodily harm was the direct and natural consequence of the intended act." (Citations omitted; internal quotation marks omitted.) Id., 77-78. "Furthermore, `[i]t is not essential that the precise injury which was done be the one intended.' Alteiri v. Colasso, [supra,168 Conn. 334]." United Services Automobile Association v. Marburg,46 Conn. App. 99, 105, 698 A.2d 914 (1997). It is sufficient that the known danger involved "goes from being `a foreseeable risk which a reasonable man would avoid and become a substantial certainty.' W. Prosser, Torts (4th Ed. 1971) 8, p. 32." Suarez v. Dickmont PlasticsCorp., 229 Conn. 99, 109, 639 A.2d 507 (1994).
In this case, the credible evidence presented at trial supports the conclusions that Grem intentionally struck Agnes, with the purpose of causing him injury.[7] This court finds that, whatever the provocation, Grem struck Agnes from behind, using a round-bottomed "rocks glass" in which an alcoholic drink had been served at the bar. Not only the location of the injury upon Agnes's head but also the fact that Agnes could not immediately recognize his attacker leads to the conclusion that he was struck from this position. The shape of the wound upon Agnes's scalp, as described by both the hospital records and reports issued by the plastic surgeon, is consistent with the size and shape of this instrument of assault.
Moreover, Grem's version of the events of June 15, 1996, is not credible. He asserts that he sustained the injury to his hand because, as Agnes grabbed him from the front and flung him about, Grem's arm swept bottles from the bar and he then landed in the shattered glass. Even if the court infers that beverage containers such as bottles or "rocks CT Page 8784 glasses" were thus propelled to the floor, there are several reasons why the court finds this evidence to lack credibility and affords it little weight. First, there was insufficient evidence from which the court could conclude that Grem suffered any scratches from glass shards or fragments, or other abrasions that common experience indicates are likely to accompany a lacerating injury caused by a fall to the ground. Second, given Grem's testimony on the subject, the court accepts his suggestion that although he had been drinking heavily while at the Chowder Pot, he was able to operate a motor vehicle and to drive safely from that establishment to Logan's, without requiring assistance or incurring the attention of law enforcement agencies. This indicates that he possessed the ability not only to consume large quantities of intoxicating beverages while maintaining physical prowess, but that he also retained the capacity to make decisions involving his own safety, such as deciding that he would drive to Logan's, rather than his companion. Such evidence supports the court's conclusion that Grem was mentally and physically able to intentionally assault Agnes at the time and place in question. Third, the court notes Grem's claims that in addition to throwing him to the ground during the course of this incident, Agnes was "punching and kicking him." (Grem's Special Defenses to the Second Count of the Complaint ¶ 1(c), dated May 5, 1997.) In an ostensible effort to support this finding, Threlfall testified that during the incident, Agnes and Grem were rolling around on the floor of the barroom, swinging and throwing punches at each other. Grem also testified that he was "basically getting the tar pounded" out of him by Agnes. However, an objective review of the evidence fails to support such a conclusion, and leads the court to discount the testimony of both Threlfall and Grem on the subject of the cause for Agnes's injuries. No portion of the extensive hospital records related to Grem's care and treatment give any indication that he suffered any injury to any part of his body other than to his hand as the result of this incident.[8] Grem's x-ray studies were negative. The irregular nature of Grem's wound is consistent with a laceration commonly caused by penetrating rather than abrading glass. Based on the totality of the evidence, including the reported nature of the laceration and the absence of other injury to Grem, along with the injury to Agnes's scalp created in a shape consistent with the bottom of the "rocks glass", the court concludes that Grem sustained his injury when the glass he intentionally used to forcefully strike Agnes broke under the stress and came apart, in sharp pieces, causing lacerations to his own hand.
Applying the foregoing principles of law to the facts in this matter, the court finds that Grem committed an intentional assault and battery upon Agnes at the time and place in question, intending that harm would be inflicted as the result of using the bottom-heavy, round-bottomed "rocks glass" to strike him. Markey v. Santangelo, supra, 195 Conn. 78; AlteiriCT Page 8785v. Colasso, supra, 168 Conn. 334. Even if a degree of recklessness accompanied his intention in perpetrating the assault, the purposeful act is predominate. Alteiri v. Colasso, supra, 168 Conn. 334.
As a result of Grem's harmful and intentional conduct, Agnes sustained personal injuries, scarring and he is subjected to the continuing pain, numbness and irritation that are the direct and natural consequence of the intended act. Markey v. Santangelo, supra, 195 Conn. 77-78. Accordingly, the court finds the second count of his complaint in favor of the plaintiff Agnes.
 B COUNT ONE — VIOLATION OF THE DRAM SHOP ACT
The first count of the complaint alleges that Logan's violated §30-102,[9] the Dram Shop Act.[10] As noted above, prior to the commencement of trial, Logan's was subject to a default finding for failure to appear at a court-ordered proceeding.[11] Logan's never moved to open this default and, as indicated, did not participate in the trial of this matter. Although the first count also contains reference to Grem's intentional assault and battery, the court finds that these claims have been adequately addressed and subject to decision through analysis of the specific and incorporated allegations set forth in the second count of the complaint, as discussed in Part III. A., above. No additional finding on this issue is required.
It is axiomatic that "[a] default admits the material facts that constitute a cause of action . . . and entry of default, when appropriately made, conclusively determines the liability of a defendant." (Internal quotation marks and citations omitted.) Bank of America, FSBv. Franco, 57 Conn. App. 688, 693, ___ A.2d ___ (2000); see also Practice Book § 17-34;[12]Travelers Indemnity Co. v. Rubin, 209 Conn. 437,445, 551 A.2d 1220 (1988); Steiger v. J.S. Builders, Inc.,39 Conn. App. 32, 36 n. 3, 663 A.2d 432 (1995) (construing Practice Book § 367, the predecessor to the applicable Practice Book § 17-34). "Where there is a default judgment and nothing more, the cause of action and every element necessary to establish it are admitted, and all that remains is to fix the amount of damages." Kiessling v. Kiessling,134 Conn. 564, 568, 59 A.2d 532 (1948). The legal effect of the entry of the court-ordered default against Logan's in this case is thus the admission of the facts alleged in the first count of Agnes's complaint in which alleging responsibility for his injuries; a finding of liability against Logan's and in favor of Agnes; and a judgment for damages against Logan's, if they are found to be appropriate. CT Page 8786
As described in Part III. A., the court has found Grem liable for the injuries caused to Agnes. In this matter, due to Logan's previous default and the application of the principles discussed above, this inkeeper-defendant is also liable for any damages that may be awarded to Agnes. The two defendants are joint tortfeasors,[13] and thus are "jointly or severally liable in tort for the same injury to person or property." See Feen v. Benefit Plan Administrators, Inc., Superior Court, judicial district of New Haven at New Haven, Docket No. 406726 (January 13, 1999, Devlin, J.) (finding that "Tort Reforms I and II concern only `causes of action based on negligence,' so that abrogation of joint and several liability in negligence cases does not affect intentional torts. . . ."); see also Donner v. Kearse, 234 Conn. 660,666, 662 A.2d 1269 (1995) (explicating common law principles of joint and several liability among tortfeasors).[14]
Accordingly, having found in favor of Agnes against Grem in the Second count of his complaint, and having also found in Agnes's favor against Logan's in the second count of his complaint, the court finds Logan's and Grem to be jointly and severally liable for Agnes's injury and for any damages that may be awarded on his behalf.[15]
 IV GREM'S SPECIAL DEFENSES
As noted above, Grem has raised three special defenses, based on both statutory and common law principles. For the following reasons, upon consideration of the applicable principles of law, the court finds these issues in favor of Agnes.
 A GREM'S FIRST AND SECOND SPECIAL DEFENSES — STATUTE OF LIMITATIONS AND THE ACCIDENTAL FAILURE OF SUIT STATUTE
In his first and second special defenses to the second count of Agnes's complaint, Grem sought protection by pleading the special defenses of General Statutes § 52-584,[16] statute of limitations, and General Statues § 52-592,[17] the accidental failure of suit statute, respectively. At trial, Grem strongly argued that Agnes's 1997 complaint was dismissed under circumstances that did not meet the requirements of § 52-592 and that Agnes was thus barred from bringing his claim of intentional assault and battery under the accidental failure of suit statute. Grem further asserted that because Agnes's complaint made specific reference to § 52-592, he had raised the application of this statute as a matter of substance, and was fatally precluded from recovery CT Page 8787 because this statute would not support his cause of action. Agnes responded by submitting that because his claim for intentional assault and battery was timely filed within the applicable statute of limitations, General Statutes § 52-577,[18] he did not need to rely upon § 52-592, and could proceed despite any unnecessary reference to that statute in his complaint. The court finds these issues in favor of Agnes.
Both of Grem's contentions rest on the proposition that Agnes' 1997 complaint was not dismissed for a "matter of form," and that § 52-592
therefore cannot save the second suit. However, despite the vigor of Grem's argument, the court finds that the issue of whether the 1997 complaint was dismissed for "form" or disciplinary reasons is functionally immaterial to the matter at hand. Section 52-592 is only applicable if the statute of limitations has expired, a circumstance which the court finds to be inapposite to the case at bar. See Gillum v. YaleUniversity, 62 Conn. App. 775, 781, ___ A.2d ___ (2001). "[Section] 52-592, the accidental failure of suit statute, allows a plaintiff to commence a new action for the same cause, within one year, if a prior action failed to be tried on its merits . . . for any matter of form. . . . The statute is considered a `saving statute' because it permits plaintiffs to commence those causes of action to which it applies after the tolling ofthe applicable statute of limitation." (Emphasis added; internal quotation marks omitted.) Gillum v. Yale University, supra,62 Conn. App. 781.
Although Grem urges the court to find that the statute of limitations had expired prior to Agnes's submission of the complaint at issue, this argument rests on his further allegation that only the statute of limitations established by § 52-584 is applicable to Agnes's claim against him. The court notes that this provision expressly limits the time within which a plaintiff may file a suit based on principles of negligence. However, the second count of Agnes's complaint lacks any reference to negligent acts and is expressly based on allegations of Grem's intentional torts. For an intentional tort, § 52-577 provides a three year statute of limitations.
The altercation at Logan's occurred on June 15, 1996. Agnes filed his second complaint on February 23, 1999, less than three years after the incident occurred. Notwithstanding the ardor of his argument, Grem has provided this court with insufficient basis for determining that §52-584, which applies only to torts based on non-intentional conduct, should constitute the statute of limitations for Agnes's second count in which intentional assault and battery is expressly alleged. Accordingly, the court declines the opportunity to accept Grem's proposals on this issue. CT Page 8788
Although § 52-592 does not apply because Agnes's action was filed within the applicable three-year limitation period, Grem has forcibly argued that this court is obligated to find this complaint to be untimely in the light of the "saving statute" which was specifically alleged in Agnes's complaint. Grem adopts this position because "[i]t is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of his complaint. . . ." Holley v. Commissioner ofCorrection, 62 Conn. App. 170, 181, ___ A.2d ___ (2001). To apply this oft-quoted maxim in the manner suggested by Grem, however, would be to misconstrue the sound policy reasons for our pleading requirements.
"Pleadings have their place in our system of jurisprudence. While they are not held to the strict and artificial standard that once prevailed, we still cling to the belief, even in these iconoclastic days, that no orderly administration of justice is possible without them. . . . The purpose of the complaint is to limit the issues to be decided at the trial of a case and is calculated to prevent surprise. . . . It is fundamental in our law that the right of a [party] to recover is limited to the allegations in his complaint. . . . A [party] may not allege one cause of action and recover on another. Facts found but not averred cannot be made the basis for a recovery. (Citations omitted; internal quotation marks omitted.) Moore v. Sergi, 38 Conn. App. 829, 841-42, 664 A.2d 795
(1995)." (Internal quotation marks omitted.) Yellow Page Consultants v.Omni Home Health Services, Inc., 59 Conn. App. 194, 200, 756 A.2d 309
(2000). "The modern trend, [however], is to construe pleadings broadly and realistically, rather than narrowly and technically." (Internal quotation marks omitted.) Beaudoin v. Town Oil Co., 207 Conn. 575,587-88, 542 A.2d 1124 (1988), and cases cited therein. "The purpose of the complaint is to put the defendants on notice of the claims made, to limit the issues to be decided, and to prevent surprise." (Internal quotation marks omitted.) KMK Insulation, Inc. v. A. Prete SonConstruction Co., Inc., 49 Conn. App. 522, 526, 715 A.2d 799 (1998). "Although essential allegations may not be supplied by conjecture or remote implication . . . the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. Price v. Bouteiller, 79 Conn. 255, 257, 64 A. 227
(1906)." Emerick v. Kuhn, 52 Conn. App. 724, 739, 737 A.2d 456, cert. denied, 249 Conn. 929, 738 A.2d 653 (1999).
The fundamental issue is thus whether Agnes's allegations, indicating reliance upon § 52-592, violated the purposes of the pleading requirement by causing any undue surprise to Grem or by allowing him to recover upon an action which he had not alleged.[19] Yellow PageConsultants v. Omni Home Health Services, Inc., supra, 59 Conn. App. 200. CT Page 8789 Despite his claims to the contrary, this court finds that Grem was not adversely affected in any measurable way by the fact that Agnes designated § 52-592 in his complaint, as the fundamental aspects of his action based on intentional tort were clearly apparent when the allegations of the second count are read in their entirety. Emerick v.Kuhn, supra, 52 Conn. App. 739. By pleading § 52-592, Grem was made aware of the potential issue, was enabled to argue the applicability of the statute, and perhaps was required to prepare for an unnecessary and unrelated aspect of trial.[20] However, this court is not persuaded that Grem's assertions that he was "forced to relive this painful episode of his life a second time, and to incur additional legal expenses" mandate the ultimate foreclosure of Agnes's claims for relief. (Summation Brief of Defendant/Counterclaimant, William Grem dated October 31, 2000.)
At closing argument, Agnes tacitly admitted that his pleading §52-592 in the intentional assault and battery count constitutes a variance from the proof. "Not every variance, however, is a fatal one since immaterial variances are disregarded under our practice. Practice Book § [10-62]. . . . Only material variances, those which disclose a departure from the allegations in some matter essential to the charge or claim, warrant the reversal of a judgment. . . ." (Internal quotation marks omitted.) Commissioner of Motor Vehicles v. Demilo Co.,233 Conn. 254, 275, 659 A.2d 148 (1995).[21]
Finally, this court notes that "[t]he interpretation of pleadings is always a question of law for the court. . . . In addition, the allegations of the complaint must be given such reasonable construction as will give effect to [it] in conformity with the general theory which it was intended to follow, and do substantial justice between theparties." (Emphasis in the original; internal quotation marks omitted.)Kunst v. Vitale, 42 Conn. App. 528, 532, 680 A.2d 339 (1996).
Applying the foregoing principles of law to the circumstances and pleadings presented in this case, the court finds that Agnes's allegation that the action is brought pursuant to § 52-592 does in fact constitute a variance between the pleading and the proof. However, this finding is tempered by the additional conclusion that the variance is inherently immaterial because Agnes's operative theory of intentional assault and battery was properly pleaded in the second count of the complaint. Accordingly, the court will not defeat Agnes's cause of action by applying an analysis based on either § 52-592 or § 52-284 to the claim of intentional assault and battery.[22] To do so would work a substantial injustice between the parties and would violate the valid policies underlying our fact-pleading system. CT Page 8790
 B GREM'S THIRD SPECIAL DEFENSE — CONTRIBUTORY RECKLESSNESS
Grem's third special defense alleges contributory recklessness on behalf of Agnes. This defense, however, is unavailing when applied to the second count, an action based upon intentional assault and battery. The court finds this issue in favor of Agnes.
The court acknowledges that "[c]ontributory recklessness would constitute a defense to an action based on recklessness. [Connecticut Law of Torts, Wright, Fitzgerald, Ankerman, § 33, pp. 57-58.]" (Emphasis added.) Tarver v. DeVito, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 120282 (June 25, 1992, Rush, J.) (7 C.S.C.R. 843). However, Agnes's second count alleges an intentional tort, not reckless conduct in its ordinary context. See differentiation in Markey v. Santangelo, supra, 195 Conn. 78. The court has concluded that Grem maintained the mental and physical capacity to form the intention to assault Agnes at the time and place in question, and that he did so, causing injury to both parties. Accordingly, any evidence of contributory recklessness on Agnes's part is not a defense to his cause of action against Grem, as set forth in the second count of the complaint.[23]
 C GREM'S FOURTH SPECIAL DEFENSE — ASSUMPTION OF THE RISK
Grem's fourth special defense asserts that by entering Logan's at the time and place in question, and by occupying a place near Grem at the bar, Agnes assumed the risk of Grem's intentional conduct. The court finds this issue in favor of the plaintiff.
The defense of assuming the risk, even in the context of comparative responsibility, is inapplicable to an intentional tort such as that placed at issue by the second count of Agnes's complaint. As has been stated with reference to another matter, "[a]ssumption of the risk is a defense to an action for negligence. . . . This is not a negligence action or a defense. First Maryland Financial Services Corp. v.District-Realty Title Insurance Corp., 548 A.2d 787, 790 (D.C. 1988). The doctrine has been overwhelmingly rejected as a defense to intentional torts. Janelsins v. Button, 648 A.2d 1039, 1045 (Md.App. 1994) (citing authorities)." (Internal quotation marks omitted.) Donahue v. S.J. Fish Sons, Inc., Superior Court, judicial district of Hartford-New Britain, Docket No. 539920 (September 18, 1995, Blue, J.). CT Page 8791
As noted above, Agnes's second count, containing the operative allegations against Grem, asserts the claim that his injuries were sustained as the result of Grem's intentional and tortious actions, without reference to reckless or negligent actions. See Part III. A., above. The evidence, viewed in its entirety, supports the allegations as submitted. Thus, this court finds that the special defense of assumption of risk does not apply to the matter at bar, providing no succor for Grem.
 D GREM'S FIFTH SPECIAL DEFENSE — SELF DEFENSE
Grem's fifth special defense alleges that Agnes's assault and battery upon Grem compelled the latter to defend himself by using force. The court finds this matter in favor of Agnes.
It is well recognized that "[a]n actor is privileged to use reasonable force, not intended or likely to cause death or serious bodily harm, to defend himself against unprivileged harmful or offensive contact or other bodily harm which he reasonably believes that another is about to inflict intentionally upon him." 2 Restatement (Second), Torts § 63, p. 98 (1965). However, any application of this principle to the case at bar would require a finding that Grem reasonably believed that Agnes was about to inflict harm or offensively contact him, and that he used reasonable force in response. The evidence is insufficient to support reliance upon this theory to protect Grem in this case.
As discussed in Part III. A., Grem has failed to prove his version of the events of June 15, 1996 which, if believed, could establish that he was therefore privileged to strike Agnes in self defense. The court has concluded, however, that Grem was the initiator of the altercation in question, and is unable to find that Agnes perpetrated any act that would reasonably cause Grem to believe he was likely to be subject to harm or offensive contact.[24]
Finding that Grem first struck Agnes from behind as Agnes attempted to leave the scene, without provocation or assault, this court finds Grem was not acting in his own defense when he raised the "rocks glass" and caused Agnes's injury. Accordingly, this court finds that Grem has failed to meet his burden of proving that he acted in self-defense at the time and place in question.
 E GREM'S SIXTH SPECIAL DEFENSE — LOGAN'S CONTRIBUTORY RECKLESSNESS
CT Page 8792
Grem's sixth special defense attempts to implicate Logan's contributory recklessness as an intervening or superceding cause of Agnes's injuries. The special defense states: "To the extent that [Agnes] suffered any injury or damages as alleged, such damage was caused by the intervening reckless acts or omissions of parties other than the Defendant, William Grem, which reckless acts or omissions superseded any alleged reckless act or omission by the Defendant, William Grem, for which said Defendant might be considered liable to the Plaintiff, and which reckless acts or omissions proximately caused the injuries alleged by the Plaintiff. The Defendant, William Grem, seeks apportionment of liability, if any, for the Plaintiff's allegations of recklessness and/or intentional conduct, as between the Co-Defendant[, Logan's]." (Grem's Special Defenses filed April 13, 1999.) The court finds this issue in favor of Agnes.
Through this sixth special defense, Grem actually raises two distinct issues. First, he claims that Logan's recklessness relieves him of personal responsibility for the incident in question. Ostensibly, he would have the court rely on the evidence which established that both Agnes and Grem were served alcoholic beverages at Logan's, and that such action was reckless on the part of the liquor-seller in question. However, there is insufficient basis in this case to allow the conclusion that in so serving liquor to either Agnes or Grem, Locan's conduct constituted a superseding" event which prevented Grem's intentional assault and battery from being a substantial factor in causing Agnes's injury. See Wagner v.Clark Equipment Co., 243 Conn. 168, 180, 700 A.2d 38 (1997) ("Whether a superseding cause was of such a character as to prevent an act of negligence of the defendant from being a substantial factor in producing a plaintiff's injury is ordinarily a question of fact."). As Grem's intentional acts were, indeed, a substantial factor in producing Agnes's injuries, Grem would not be relieved from liability for those injuries even though another force, such as conduct on the part of Logan's, may have concurred to produce them. See Wagner v. Clark Equipment Co., supra, 243 Conn. 180. Here, a careful examination of the evidence fails to support any reasonable conclusion other than that it was Grem's direct actions, without contribution from any other party, which caused the injuries sustained by Agnes.
Second, Grem utilizes this special defense to assert that he may properly seek apportionment for the harm caused by Logan's violation of § 30-102. Apportionment, however, is not appropriate in this case. "Where the tortious conduct of two or more actors has combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each actor. . . . Damages for harm are to be apportioned among two or more CT Page 8793 causes where (a) there are distinct harms, or (b) there is a reasonable basis for determining the contribution of each cause to a single harm."Connecticut Building Wrecking Co. v. Carothers, 218 Conn. 580, 608,590 A.2d 447 (1991), quoting 2 Restatement (Second), Torts §§ 433 A and 433 B (1965).
This court finds that Grem has not sustained his burden as to apportionment of the harm caused to Agnes. Generally, apportionment may be applied to tortfeasors who act concurrently. Reilly v. DiBianco,6 Conn. App. 556, 567-72, 507 A.2d 106, cert. denied, 200 Conn. 804,510 A.2d 193 (1986); see also Gutowski v. New Britain, 165 Conn. 50, 54-55,237 A.2d 552 (1973). However, in this matter, Grem has not proven that Logan's act of serving him liquor caused a distinct harm or that serving him liquor provided a reasonable basis for determining the contribution of each cause to a single harm. Accordingly, this court finds that the evidence is insufficient to allow any apportionment of the damages between Grem and Logan's, and reiterates that these two defendants are jointly and severally liable to Agnes. See Part III. B., above
 V GREM'S COUNTERCLAIM AND AGNES'S SPECIAL DEFENSES
Grem's counterclaim dated April 13, 1999 alleges in the first count that he sustained injury as the result of Agnes's negligence, and in the second count, that his injuries were caused by Agnes's reckless conduct. The facts serving as the basis for Grem's counterclaim also arise from the events that are alleged to have occurred on June 15, 1996.
This court finds that Grem has failed to prove that Agnes was either negligent or reckless. As stated in Parts II and III. A., above, Grem struck Agnes from behind as Agnes was attempting to leave Logan's. The court rejects any interpretation of the facts which would lead to the conclusion that any negligent non-intentional behavior, on Agnes's part, was causally related to Grem's injuries. The facts, as found by the court, do not permit a reasonable basis for inferring that Agnes was in any way negligent or reckless. Accordingly, Grem has not met his burden of proving the allegations of his counterclaims.
On June 4, 1999, Agnes filed special defenses responding to Grem's counterclaim. Because of the decision related to Grem's failure to prove the issues related to his counterclaims, this court need not decide the merit of Agnes's special defenses.
 VI
CT Page 8794 DAMAGES
Agnes has proven liability against both defendants. It is clear that the party who establishes tort liability is entitled to fair, just and reasonable compensation for his injuries. Herb v. Kerr, 190 Conn. 136,139, 459 A.2d 521 (1983). However great the burden on the fact-finder, "[d]amages in personal injury cases cannot be computed mathematically, nor does the law furnish any precise, definite rule for their assessment." Sardonis v. Govan, 132 Conn. 668, 670, 46 A.2d 895 (1946); see also Conaway v. Prestia, 191 Conn. 484, 494, 464 A.2d 847 (1983).
"That damages may be difficult to assess is, in itself, insufficient reason for refusing them once the right to damages has been established."Griffin v. Nationwide Moving and Storage Co., 187 Conn. 405, 420,446 A.2d 799 (1982). "The fact that it is difficult to measure pain and suffering in terms of money does not prevent a recovery as long as there is a reasonable basis in the evidence for that recovery." Leabo v.Leninski, 2 Conn. App. 715, 727, 484 A.2d 239 (1984).
In this case, the credible evidence demonstrates that Grem intentionally struck Agnes. As a direct and proximate result of this harmful and offensive conduct, Agnes sustained personal injuries and continuing pain and suffering and medical expenses.[25] As for Logan's, it has defaulted, admitting its liability in this case. In consideration of the evidence related to the nature and extent of Agnes's injuries, the care and treatment required to address those injuries, his losses and the permanent effect of those injuries,[26] the court awards him the following damages which are determined to be fair, just and reasonable compensation:[27]
A. Economic Damages $848.27
B. Non-economic Damages $20,000.00
TOTAL COMPENSATORY DAMAGES $20,848.27[28]
 VII CONCLUSION
WHEREFORE, as the defendant Logan's had admitted liability as to the first count of Agnes's complaint, and as Agnes has proven the defendant Grem's liability for intentional assault and battery as alleged in the second count of his complaint, while Grem has failed to satisfactorily prove any of his special defenses or the allegations of his counterclaim, this court finds it unnecessary to consider the issues raised through CT Page 8795 Agnes's Answer and Special Defenses to Defendant William Grem's Counterclaim dated April 13, 1999 (#104.)
AND WHEREFORE, as this court has found the defendants Grem and Logan's to be jointly and severally liable to and responsible for paying Agnes's compensatory damages, they are hereby jointly and severally ORDERED to pay the plaintiff a total of $20,000 in compensatory damages. The defendant Grem is further ORDERED to pay Agnes an additional $848.27 in damages.
BY THE COURT,
N. Rubinow, J.