STATE OF CONNECTICUT *v.* JOHN M. LEARY
(AC 16438)

Lavery, Spear and Shea, Js.

Argued November 6, 1998—officially released January 12, 1999

*Barry N. Silver*, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Eugene R. Calistro*, assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant, John Leary, appeals from the judgment of conviction of ticket scalping in violation of General Statutes § 53-289 rendered after a trial to the court.[1] He claims that the trial court improperly (1)

---

[1] General Statutes § 53-289 provides in relevant part: "No person shall sell, offer for sale or attempt to sell any ticket, privilege or license of admission to an entertainment event, including, but not limited to, any place of amusement, arena, stadium, theater, performance, sport, exhibition or athletic contest given in this state, at a price greater than the price, including tax, printed thereon, or at a price greater than the price fixed for admission, including tax, and a reasonable service charge for services actually rendered not to exceed three dollars. The owner or operator of the property on which such entertainment event is to be held or is being held may authorize, in writing, any person to sell such ticket, privilege or license of admission at a price in excess of that authorized under this section. Such writing shall specify the price for which such ticket, privilege or license of admission is to be sold. Any person violating any provision of this section shall be guilty of ticket scalping. . . ."

denied his motions to dismiss and to suppress that were premised on a claimed lack of probable cause to arrest, (2) denied his motion for a judgment of acquittal that alleged that the evidence was insufficient to support his conviction and (3) found the defendant guilty even though the weight of the evidence demonstrated that the guilty finding was manifestly unjust. We affirm the judgment.

The trial court found that on January 21, 1996, the defendant was on George Street, in the vicinity of the New Haven Coliseum, with tickets for a concert at the Coliseum in his hand. Those tickets had face values no greater than $30, yet the defendant offered New Haven police officer Aaron Sweeney, working undercover, floor seats for $70. The trial court found the defendant guilty as charged and this appeal followed.

## I

### A

The defendant first claims that the trial court should have granted his motion to dismiss in which he alleged, inter alia, that he "was placed under arrest without the requisite probable cause." He offers no analysis or authority in support of this claim, and, therefore, we decline to review it because it is inadequately briefed.[2] "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Citation

[2] We note that our Supreme Court has held that "an illegal arrest imposes no jurisdictional barrier to a defendant's subsequent prosecution . . . . Where the fairness of a subsequent prosecution has not been impaired by an illegal arrest, neither the federal nor the Connecticut constitution requires dismissal of the charges or a voiding of the resulting conviction." *State* v. *Fleming*, 198 Conn. 255, 262–63, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986); see also *State* v. *Douglas*, 10 Conn. App. 103, 124, 522 A.2d 302 (1987).

omitted; internal quotation marks omitted.) *State* v. *Henderson*, 47 Conn. App. 542, 558, 706 A.2d 480, cert. denied, 244 Conn. 908, 713 A.2d 829 (1998).

B

The defendant next claims that the trial court improperly denied his motion to suppress evidence[3] because Sweeney lacked probable cause to arrest him for ticket scalping. He asserts that the arresting officer's lack of knowledge of both the face value of the tickets possessed by the defendant and the identity of those with permission to sell tickets for more than the face value precludes a finding of probable cause.

"We review the trial court's finding of probable cause under the clearly erroneous standard, wherein we defer to the trial court's factual findings unless they are clearly erroneous and defer to the trial court's legal conclusion unless it is not legally and logically consistent with the factual findings." *State* v. *Torres*, 31 Conn. App. 443, 450, 625 A.2d 239 (1993), aff'd, 230 Conn. 372, 645 A.2d 529 (1994).

Probable cause is a common sense, nontechnical concept. "Probable cause exists when there are facts and circumstances within the officer's knowledge, and of which he has trustworthy information, sufficient to justify the belief of a reasonable person that an offense has been or is being committed. . . . The probable cause test then is an objective one. . . . While probable cause requires more than mere suspicion . . . the line between mere suspicion and probable cause is often fine and that line necessarily must be drawn by an act of judgment formed in the light of the particular

---

[3] The motion requested that the court suppress all of the state's evidence, "including written and tangible materials as well as verbal statements that arise from [the defendant's] arrest." It is clear that the motion sought to suppress the tickets that were seized from the defendant, but we are unable to ascertain what, if any, other items the defendant sought to suppress.

situation and with account taken of all the circumstances. . . . The process [of determining probable cause] does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same— and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement. . . . We also note that the issue of the existence of probable cause does not turn on whether the defendant could have been convicted on the same available evidence. Probable cause deals with probabilities, not hard certainties." (Citations omitted; internal quotation marks omitted.) *State* v. *Pierog*, 33 Conn. App. 107, 115–16, 634 A.2d 301 (1993), cert. denied, 228 Conn. 920, 636 A.2d 851 (1994).

We turn first to the factual basis for the court's denial of the motion to suppress. The trial court did not issue a written memorandum of decision and the transcript of the oral decision contains very little fact finding. The defendant focuses on the court's statement that "[i]t turns out the tickets had a value between $25 and $30" and asserts that this statement shows that the trial court used information that was gained after the arrest to find probable cause for the arrest. We disagree.

First, the trial court heard the motion during the trial and the arresting officer testified at the motion hearing and during the state's case-in-chief, both of which were prior to the court's ruling on the motion. The evidence was not designated as applying to the motion to suppress or the state's case-in-chief. We cannot discern whether the court's comment was a reference to evidence brought out during trial or whether the court was using that information to justify its finding of probable

cause. Moreover, the defendant did not file a motion to articulate to clarify the basis of the court's decision. Second, Sweeney testified that he knew before he arrested the defendant that the tickets for that evening's event "were $25, $30 in that area, much lower than the $70." This information, in conjunction with all of the circumstances, was sufficient for the officer to conclude that the defendant's offer to sell him a ticket for $70 gave him probable cause to arrest the defendant for ticket scalping.

The defendant also claims that there was no probable cause because Sweeney testified that he did not know who, if anyone, had permission to sell tickets for more than their face value. Even if we assume, without deciding, that such information is part of the probable cause calculus, the facts known to the arresting officer gave him reason to believe that the defendant did not have such permission. Sweeney observed an earlier sale wherein the defendant's customer jokingly told the defendant that he was a police officer and that the defendant was "under arrest." The defendant replied, "Don't even fuck around. That's not even funny," suggesting that the defendant was not selling the tickets with the permission of the owner or operator. Moreover, the arresting officer and his partner were being paid by the coliseum and met with coliseum officials prior to starting their tour of duty to detect and deter ticket scalping. It would have been nonsensical for those in charge of the coliseum to have hired these officers to deter ticket scalping while at the same time authorizing the defendant to roam around the outside of the facility selling tickets for more than their face value.

After reviewing the evidence and the sparse oral decision, we cannot say that the trial court's factual findings were clearly erroneous or that its conclusion that there was probable cause to arrest the defendant was improper.

## II

The defendant's next claim, that the evidence was insufficient to support his conviction of ticket scalping, is based on the same arguments that he makes with respect to the finding of probable cause. He asserts that the state never established the face value of the tickets at issue and never established that the defendant did not have permission to sell the tickets for more than their face value. We note that the trial court's oral decision with respect to the finding of guilt is also very sparse and there was no motion for an articulation. Nevertheless, we have reviewed the record and transcript and conclude that the evidence was sufficient to support the conviction.

James Perillo, the executive director of the coliseum, testified that "all tickets were $25, except for tickets purchased the day of the event, and then it jumped to $30 a ticket." Again, even if we assume arguendo that the state had to prove that the defendant did not have permission to sell tickets for more than their face value, the evidence was sufficient on that point. Perillo testified that it was his responsibility as the representative of the owner or operator to authorize persons to sell tickets for more than face value and he did not give such authorization to the defendant. He also testified that neither the owner nor the operator authorized the defendant to sell tickets in excess of their face value.

When reviewing a sufficiency claim, we do not retry the case or resurrect hypotheses of innocence that were rejected by the fact finder. Rather, "we construe the evidence in the light most favorable to sustaining the verdict . . . [and] determine whether, from that evidence and all reasonable inferences that it yields, a trier of fact could reasonably have concluded that the defendant was guilty beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Teti*, 50

Conn. App. 34, 38, 716 A.2d 931 (1998), quoting *State* v. *Scales*, 38 Conn. App. 225, 228, 660 A.2d 860 (1995). We conclude that the evidence was sufficient to support a finding of guilty.

### III

The defendant's last claim is that the trial court's finding of guilt was against the weight of the evidence. He claims that the guilty finding is not plausible and is manifestly unjust because the defendant had been "plying his trade outside the coliseum for some ten years and not once was he arrested for a violation of [General Statutes §] 53-289." He further argues that if "seasoned and experienced officers have not been able to catch [the defendant] violating the law in a decade," the state's contention that Sweeney, who had been on the New Haven police force for nine years but was working this detail for the first time, made a valid arrest is simply implausible. He asserts that the "possibility of the factual events occurring as theorized by the state is so vastly remote that it is implausible and serves to constitute a manifest injustice . . . that requires the reversal of the guilty verdict."

The defendant's claim does not assert that the finding of guilt was physically impossible or the result of some corrupting influence. See *State* v. *Hammond*, 221 Conn 264, 268, 604 A.2d 793 (1992); *State* v. *Sherman*, 38 Conn. App. 371, 418, 662 A.2d 767, cert. denied, 235 Conn. 905, 665 A.2d 905 (1995). It is simply an attack on the credibility of the arresting officer and is without merit. It is clear that "[t]he credibility of witnesses is for the trier of fact to determine." *Charlton* v. *Commissioner of Correction*, 51 Conn. App. 87, 91, 719 A.2d 1205 (1998).

The judgment is affirmed.

In this opinion the other judges concurred.