******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JAMARR FOWLER
(AC 38979)

DiPentima, C. J., and Alvord and Pellegrino, Js.

*Syllabus*

The defendant, who had been on probation in connection with his conviction
of the crimes of interfering with an officer and forgery in the second
degree, appealed to this court from the judgment of the trial court
revoking his probation and committing him to the custody of the Com-
missioner of Correction for a period of three years. *Held*:

1. The trial court's finding that the defendant violated conditions of his
   probation by failing to keep probation officers informed of his where-
   abouts and to provide probation officers with a valid and verifiable
   address was not clearly erroneous and was supported by sufficient
   evidence in the record; the evidence in the record demonstrated that,
   for approximately seven weeks, probation officers attempted to obtain
   a verifiable address for the defendant but that he failed to provide a
   valid address despite numerous opportunities to do so.

2. This court having determined that there was sufficient evidence for the
   trial court to find that the defendant violated the conditions of his
   probation by failing to keep probation officers informed of his where-
   abouts and to provide a valid and verifiable address, which was sufficient
   to serve as a basis for revoking his probation, it was not necessary for
   this court to consider the defendant's claim that the office of probation
   did not have the authority to require him to submit to global positioning
   system monitoring, or whether the defendant's refusal to do so consti-
   tuted a violation of the conditions of his probation.

The defendant's claim that the trial court erred in denying his oral motion
to dismiss was not reviewable, the defendant having failed to brief the
claim adequately.

Argued October 5—officially released November 28, 2017

*Procedural History*

Information charging the defendant with violation of
probation, brought to the Superior Court in the judicial
district of Stamford-Norwalk, where the court, *A.*, *Grog-
ins, J.*, denied the defendant's motion to dismiss; there-
after, the matter was tried to the court; judgment
revoking the defendant's probation, from which the
defendant appealed to this court. *Affirmed.*

*Robert J. McKay*, assigned counsel, for the appel-
lant (defendant).

*Timothy F. Costello*, assistant state's attorney, with
whom, on the brief, were *Richard J. Colangelo, Jr.*,
state's attorney, and *Mitchell Rubin*, senior assistant
state's attorney, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Jamarr Fowler, appeals from the judgment of the trial court revoking his probation and imposing a previously suspended three year prison sentence. On appeal, the defendant claims that the trial court improperly (1) found a violation of probation on the basis of insufficient evidence; (2) determined that the Office of Probation had authority to include a probation condition that the defendant must submit to global positioning system (GPS) monitoring; and (3) denied the defendant's motion to dismiss. We affirm the judgment of the trial court.

The record reveals the following relevant facts.[1] On July 30, 2015, pursuant to a plea agreement, the defendant pleaded guilty to one count of interfering with an officer in violation of General Statutes § 53a-167a and one count of forgery in the second degree in violation of General Statutes § 53a-139. The trial court, *White J.*, imposed a total effective sentence of three years incarceration, fully suspended, followed by three years of probation. That same day, the defendant met with a probation intake specialist and reviewed the conditions of his probation, which required, in relevant part, that he "[k]eep the probation officer informed of where you are," "tell your probation officer immediately about any change to your . . . address," and "[d]o not leave the State of Connecticut without permission from the probation officer."[2]

At the time of his intake, the defendant informed Probation Officer Shonda Wright that he had no family or ties in the state of Connecticut, and that he was living in a New York homeless shelter prior to his arrest. Probation Officer Wright told the defendant that probation officials would investigate transferring his probation to the state of New York, but only if he provided a valid and verifiable New York address. Probation Officer Wright instructed the defendant to contact the probation office on August 3, 2015, with a verifiable New York address.

On August 3, the defendant called the probation office and spoke to Probation Officer Wright. He explained that he was in New York, homeless, and could not provide a New York address to facilitate the transfer of his probation. Probation Officer Wright informed the defendant that if he could not provide a New York address, his probation would have to be supervised in Connecticut.

On August 10, 2015, the defendant called Probation Officer Wright and informed her that he still did not have a New York address. He claimed that he was in New York at the time, but could not provide her with the address of where he was staying. Probation Officer Wright again informed the defendant that if he did not secure a New York address as soon as possible, he

would have to return to Connecticut and be supervised by Connecticut probation officials.

Because probation officials considered the defendant to be a "higher risk" probationer due to his failure to provide a verifiable address and his newly discovered status as a registered sex offender in New York,[3] Chief Probation Officer Lorraine Rodrigues assumed oversight of the defendant's file on August 14, 2015. On that date, Chief Probation Officer Rodrigues spoke with the defendant and reminded him that he was required either to provide a New York address, or return to Connecticut to be supervised, and that if he did not do so by August 17, 2015, probation officials would issue a violation of probation warrant for his arrest. She also advised the defendant that the decision to accept the transfer of his probation was "completely discretionary" on the part of New York probation officials, who would investigate whether any address that he provided was suitable for supervision. She also informed him that if New York probation officials rejected the transfer, he would have to return to Connecticut to be supervised.[4]

On August 17, 2015, the defendant contacted Probation Officer Wright and provided her with a New York address. Probation Officer Wright forwarded the address to New York probation officials as part of an application for an interstate transfer. On September 8, New York probation officials notified Connecticut probation officials that New York had denied the interstate transfer request because the provided address was within 1000 feet of a public school, which was not permitted due to the defendant's status as a registered sex offender. That same day, Probation Officer Wright informed the defendant that his interstate transfer request was denied. She directed the defendant to return to Connecticut by September 10, 2015, to be supervised by Connecticut probation officials. Probation Officer Wright described the defendant as "very agitated" during this phone call. Probation Officer Wright transferred the call to Chief Probation Officer Rodrigues, who reiterated the same information to the defendant.[5]

On September 10, 2015, the defendant called Chief Probation Officer Rodrigues. Chief Probation Officer Rodrigues advised the defendant that he was in New York without permission, and instructed him to return to Connecticut by 10 a.m. on September 15, 2015, or probation officials would issue a violation of probation warrant.[6] Later that day, the defendant called Chief Probation Officer Rodrigues and stated that he remembered that he had a pending criminal case in New York and his conditions of release did not permit him to leave the state. Connecticut probation officials investigated this claim, and discovered that while the defendant did have a pending criminal case in New York, the court-ordered conditions of his release did not prohibit

him from leaving that state.[7]

On September 15, 2015, the defendant reported to the Stamford probation office with his attorney, Benjamin Aponte. The defendant and Aponte met with Chief Probation Officer Rodrigues and Chief Probation Officer Marvin Parsons. At that meeting, the defendant provided an address in the Bronx, New York. He claimed that his aunt had an apartment there, and that she would allow him to take over the lease and reside at the apartment. Chief Probation Officer Parsons asked the defendant for his aunt's contact information, and the defendant was unable to provide it. On the basis of the defendant's inability to provide contact information, coupled with New York's previous rejection of the defendant's transfer request due to the defendant's then stated New York address, Chief Probation Officer Parsons declined at that time to investigate the Bronx address.[8] Chief Probation Officers Parsons and Rodrigues also informed the defendant that his conditions of release in New York did not bar him from leaving the state.[9] Chief Probation Officers Parsons and Rodrigues instructed the defendant to provide the name and address of the hotel[10] where he would be staying that night so that his location could be confirmed, and also instructed him to appear for a scheduled appointment the following day. The defendant did not provide an address that night as instructed.

On September 16, at 5 a.m., the defendant called the probation office and left a voicemail stating that he was staying at 20 Hale Drive in Windsor. At Chief Probation Officer Parsons' request, two probation officers from Hartford traveled to the Windsor address to investigate. The probation officers spoke with a female resident, who told them that she did not know the defendant and he was not residing at the address. Subsequently, the defendant called the probation office and claimed that a friend, unbeknownst to the friend's wife, was allowing him to stay in the back of the Windsor residence in a shed. The defendant refused to provide contact information for his friend. The defendant was instructed to bring the information to a scheduled appointment later that day.

Later that day, one and a half hours late, the defendant reported to the probation office. At that point, because the defendant still had failed to provide a valid and verifiable address, probation officials informed the defendant that he would be placed on a GPS monitor. The defendant refused, stating, "never in a million years would I agree to go on a GPS monitor." Because the defendant had been given approximately seven weeks to provide a valid and verifiable address and failed to do so, and was considered a higher risk due to his sex offender status in New York, Chief Probation Officer Parsons drafted an application for an arrest warrant for violation of probation when the defendant refused

to submit to GPS monitoring. That same day, the court, *Hon. Richard F. Comerford, Jr.*, judge trial referee, signed the warrant and probation officials arrested the defendant.

During the adjudication phase of the defendant's violation of probation hearing, the state called Chief Probation Officer Parsons to testify and entered five exhibits into evidence, including a copy of the defendant's signed conditions of probation and the violation of probation warrant. The defendant did not offer any evidence. The trial court, *A.*, *Grogins*, *J.*, found that the defendant had violated the conditions of his probation, specifically that he failed to keep probation apprised of his whereabouts and failed to provide a valid and verifiable address to probation. Following the adjudication phase of the hearing, the court sentenced the defendant to a period of three years incarceration. This appeal followed.

I

The defendant's first claim on appeal is that there was insufficient evidence to support the trial court's finding that he violated a condition of his probation. Specifically, he contends that "according to the testimony of [Chief] Probation Officer Parsons . . . [he] did, in fact, keep the probation department informed of his whereabouts at all times."[11] We disagree.

"[A] probation revocation hearing has two distinct components. . . . The trial court must first conduct an adversarial evidentiary hearing to determine whether the defendant has in fact violated a condition of probation. . . . If the trial court determines that the evidence has established a violation of a condition of probation, then it proceeds to the second component of probation revocation, the determination of whether the defendant's probationary status should be revoked. . . . To support a finding of probation violation, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation. . . . In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . This court may reverse the trial court's initial factual determination that a condition of probation has been violated only if we determine that such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling. . . . A fact is more probable than not when it is supported by a fair preponderance of the evidence." (Internal quotation marks omitted.) *State* v. *Sherrod*, 157 Conn. App. 376, 381–82, 115 A.3d 1167, cert. denied,

318 Conn. 904, 122 A.3d 633 (2015).

The record reveals sufficient evidence for the court reasonably to have found that the defendant violated the conditions of his probation by failing to keep probation officers informed of his whereabouts and failing to provide probation officers with a valid and verifiable address. At the violation of probation hearing, the state entered into evidence, inter alia, the defendant's conditions of probation and the violation of probation warrant, and also called Chief Probation Officer Parsons to testify as to the basis for the drafting of the violation of probation warrant. Chief Probation Officer Parsons detailed the approximately seven week efforts of probation officials to obtain a verifiable address for the defendant in either Connecticut or New York. He explained that probation officials violated the defendant because "he had been given approximately a month and a half to provide a valid address, either in the state of New York or Connecticut and was unable to do so. . . . [W]e just did not have an established residence for him and we felt that he was afforded ample opportunity to provide that." The court credited the state's evidence and found that "after listening to the testimony presented by the state and reviewing all of the exhibits in the record provided that the defendant did violate the conditions of his probation and the state proved that by a fair preponderance of the evidence and specifically proved that the defendant did not keep probation apprised of his whereabouts and that he failed to provide a valid and verifiable address to probation." Based on the evidence presented of the defendant's repeated failures to provide a valid and verifiable address in either New York or Connecticut despite numerous opportunities to do so, we cannot conclude that the trial court's finding that the defendant violated the conditions of his probation was clearly erroneous. See *State* v. *Miller*, 83 Conn. App. 789, 795–96, 851 A.2d 367 (sufficient evidence for trial court to find a violation of probation where probation officer testified that [1] he called two phone numbers provided by defendant and spoke with individuals who led him to believe that defendant was not residing there; and [2] sent letters to two addresses provided by defendant and both were returned, one marked "[d]oesn't live here" [internal quotation marks omitted]), cert. denied, 271 Conn. 911, 859 A.2d 573 (2004); *State* v. *Garuti*, 60 Conn. App. 794, 797–98, 761 A.2d 774 (2000) (sufficient evidence for trial court to find violation of probation where probation officer testified that when he visited an address provided by defendant, a woman informed him that defendant "had never stayed at that address" [internal quotation marks omitted]), cert. denied, 255 Conn. 931, 767 A.2d 102 (2001).

"The weight to be given [to] the evidence and [to] the credibility of witnesses [is] solely within the determination of the trier of fact. . . . The court performed

its duty, and we will not usurp its function." (Citation omitted; internal quotation marks omitted.) *State* v. *Shakir*, 130 Conn. App. 458, 469, 22 A.3d 1285, cert. denied, 302 Conn. 931, 28 A.3d 345 (2011). In light of this record, we conclude that there was sufficient evidence to find that the defendant violated his probation.[12]

## II

The defendant next claims that the trial court improperly determined that the office of probation had authority, pursuant to General Statutes § 53a-30 (b),[13] to require him to submit to GPS monitoring during his probationary period. He argues that "[t]he probation department did not have authority to add this condition since it was not included as part of the defendant's plea agreement, which the court, *White, J.*, accepted," and that General Statutes § 53a-30 (c) "requires a hearing and a showing of good cause before any additions or enlargements can be made to his condition of probation." He further contends that "the refusal to wear a GPS monitor, when not a standard or special condition ordered by the court at his plea of July 30, 2015, does not constitute a violation of his probation." We need not address this claim.

"[A] violation of any one condition of probation would suffice to serve as a basis for revoking the defendant's probation. . . . Our law does not require the state to prove that all conditions alleged were violated; it is sufficient to prove that one was violated." (Internal quotation marks omitted.) *State* v. *Lanagan*, 119 Conn. App. 53, 62, 986 A.2d 1113 (2010). Given that we have already concluded that there was sufficient evidence for the trial court to find that the defendant violated the conditions of probation by failing to keep probation officers informed of his whereabouts and to provide a valid and verifiable address, we need not consider whether the office of probation had authority to require the defendant to submit to GPS monitoring, or whether the defendant's refusal to do so constituted a violation of the conditions of his probation. Because such a determination by this court would not affect the disposition of this appeal, we decline to reach this claim.[14]

## III

The defendant's final claim is that the trial court erred in denying his oral motion to dismiss. Because "[h]e offers no analysis or authority in support of this claim . . . we decline to review it because it is inadequately briefed." *State* v. *Leary*, 51 Conn. App. 497, 499–501, 725 A.2d 328 (1999). The defendant devotes less than one page of his brief to this claim, which provides little more than a factual account of his oral motion to dismiss raised at the violation of probation hearing, and includes neither argument nor analysis of his passing citation to case law. See *State* v. *T.R.D.*, 286 Conn. 191, 213–14 n.18, 942 A.2d 1000 (2008) (declining to review

claim as inadequately briefed where defendant "devoted a mere three quarters of a page in his brief to [the] claim, and failed to explicate adequately" the basis of his argument); *State* v. *Duteau*, 68 Conn. App. 248, 261–62, 791 A.2d 591 (declining to review claim as inadequately briefed where defendant failed to "provide either legal authority or analysis to support this claim"), cert. denied, 260 Conn. 939, 835 A.2d 58 (2002). "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Leary*, supra, 499. Because the defendant's claim is inadequately briefed, we decline to address it.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although the trial court did not make detailed factual findings as to each of the facts discussed herein, it did state on the record that "I also find I credited the testimony and the exhibits heard." The grounds for the trial court's conclusion that the defendant violated his probation are adequately shown in the record before this court.

[2] The defendant signed the conditions of probation to acknowledge that he read and understood them, that a probation officer had reviewed them with him, and that he would follow them.

[3] An August 5, 2015 criminal background check revealed that the defendant was registered as a sex offender in New York, and that he was listed as homeless on New York's sex offender registry.

[4] During this phone call, Chief Probation Officer Rodrigues informed the defendant that if he could not find housing in Connecticut, probation officials would investigate placing him in transitional housing or a local shelter.

[5] Later that day, the defendant called Connecticut's central probation office stating that he did not understand why New York had denied his transfer request. He claimed that New York probation officials previously supervised him at the address he provided and that the address had been "preapproved." Probation officials contacted New York and learned that, in fact, the defendant had never been under probation or parole supervision in New York.

[6] Chief Probation Officer Rodrigues described the defendant as "argumentative" during this call. He asserted that he had just started a new job in New York, did not have the finances to return to Connecticut, did not have a place to stay in Connecticut, and did not want to return to Connecticut. Chief Probation Officer Rodrigues informed the defendant that if his employment was verified, probation officials would consider allowing him to travel back and forth to New York for work. Chief Probation Officer Rodrigues again informed the defendant that probation could refer him to transitional housing or a local shelter. The defendant rejected Chief Probation Officer Rodrigues' offer of temporary housing.

[7] Rather, the defendant and his bail bondsman on the New York matter agreed that he would not leave New York.

[8] Chief Probation Officer Parsons did, however, advise the defendant that probation officials would investigate whether the Bronx address was suitable for transferring his case if he provided contact information for his aunt.

[9] Chief Probation Officers Parsons and Rodrigues offered to notify the bondsman that the defendant had legal obligations in Connecticut. They also informed the defendant that probation officials would permit him to travel back and forth to New York for any court appearances there, as long as the appearances could be verified.

[10] Chief Probation Officers Parsons and Rodrigues offered to secure the defendant housing at a local shelter in Stamford, but the defendant declined to stay at a local shelter and instead requested information about hotels in the Stamford area. Knowing, based on the defendant's representations, that he was homeless, Chief Probation Officer Rodrigues provided the defendant with a list of low budget hotels and motels. The defendant rejected that list

as unsuitable and stated that he would find his own housing.

[11] The defendant also argues that he was "allowed by the probation department to leave the state of Connecticut to find an address in the state of New York" and "constantly reported in person or by phone to a probation officer as directed by probation." The trial court only found that the defendant had violated the condition that he keep probation informed of his whereabouts and provide probation with a valid and verifiable address. Accordingly, we need not address the defendant's arguments as to the conditions of his probation prohibiting him from leaving Connecticut without permission and requiring him to report to probation as directed.

[12] The defendant also challenges the trial court's revocation of his probation and imposition of the previously suspended three year prison sentence as an abuse of discretion. In making the determination of whether a defendant's probation should be revoked, "the trial court is vested with broad discretion." (Internal quotation marks omitted.) *State* v. *Sherrod*, supra, 157 Conn. App. 382. "On appeal, we will disturb a trial court's sentencing decision only if that discretion clearly has been abused." *State* v. *Shakir*, supra, 130 Conn. App. 470. In the sentencing phase of the hearing, the trial court concluded: "I find that based on the credible testimony presented that you had numerous opportunities and time provided to you to follow probation's direction and keep them apprised of your whereabouts and give them a valid and verifiable address and you didn't do that—that you during the time that the probation staff was giving you these opportunities you were not cooperative, you did not cooperate with them, you did not comply, you were argumentative and combative, and once again you didn't fulfill the ultimate goals of probation and probation's purposes are exhausted." In light of the record, we conclude that the trial court did not abuse its discretion in revoking the defendant's probation and sentencing him to a period of incarceration.

[13] General Statutes § 53a-30 (b) provides: "When a defendant has been sentenced to a period of probation, the Court Support Services Division may require that the defendant comply with any or all conditions which the court could have imposed under subsection (a) of this section which are not inconsistent with any condition actually imposed by the court."

General Statutes § 53a-30 (a) (14) provides in relevant part: "When imposing sentence of probation or conditional discharge, the court may, as a condition of the sentence, order that the defendant . . . be subject to electronic monitoring, which may include the use of a global positioning system."

[14] We also decline to address this argument on the basis that the trial court made no finding regarding the office of probation's statutory authority to require the defendant to submit to GPS monitoring. See, e.g., *DeFeo* v. *DeFeo*, 119 Conn. App. 30, 32 n.3, 986 A.2d 1099 (2010) (declining to address argument that trial court improperly found that plaintiff did not receive notice of foreclosure where court made no such finding).

———————————————————