******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

## STATE OF CONNECTICUT *v.* LIN QI SI
### (AC 39852)

DiPentima, C. J., and Sheldon and Harper, Js.

*Syllabus*

Convicted of the crime of negligent homicide with a commercial motor vehicle in connection with an accident that occurred when the bus he was driving struck and killed the decedent, a pedestrian crossing a road at an intersection, the defendant appealed to this court. On appeal, he claimed, inter alia, that the trial court erred by failing to instruct the jury properly on the essential element of causation. Specifically, he claimed that the jury charge was materially misleading because the jury instructions on proximate causation could have led the jury to disregard the conduct of the decedent entirely and, thus, to ignore the possibility that she was the sole proximate cause of her own death. *Held*:

1. The defendant could not prevail on his claim that the trial court improperly instructed the jury because it failed to instruct the jurors that it would be a complete defense to the charge of negligent homicide with a commercial motor vehicle that the decedent's negligence was the sole proximate cause of her own death: although the trial court did not provide the jury with the requested instruction verbatim, it included the substance of the requested charge in its instructions, which correctly charged the jury that proximate cause is an essential element of negligent homicide with a commercial motor vehicle that the state must prove beyond a reasonable doubt and, thus, effectively instructed the jury that the state must disprove the defense of sole proximate cause, as proof that the defendant's negligence proximately caused the decedent's death is necessarily inconsistent with any claim that some other, concurrent cause was the sole proximate cause of the death; moreover, the jury charge was not materially misleading because, although certain portions of the jury instructions misstated the applicable law with respect to the element of proximate causation, namely, that it was the state's obligation to prove that it was not the negligence of the decedent that led directly to her death, that instruction actually heightened the state's burden of proof to the benefit of the defendant so that no harm or injustice to the defendant resulted, and there was no evidence in the record supporting a finding that the instructions guided the jury to discount any fact or set of facts inconsistent with the defendant's guilt, as the evidence presented did not establish that the decedent's negligent conduct contributed so substantially and materially to her own death that the defendant could not have been a proximate cause of the death, and the jury's finding that the defendant's negligence was a proximate cause of the decedent's death was supported by overwhelming evidence.

2. The trial court did not err when it provided the jury with a copy of the jury charge during deliberations, as that was a permissible practice and within the discretion of the court.

Argued April 16—officially released August 28, 2018

*Procedural History*

Information charging the defendant with the crime of negligent homicide with a commercial motor vehicle, brought to the Superior Court in the judicial district of New London at Norwich, geographical area number twenty-one, and tried to the jury before *A. Hadden, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*John F. Geida*, for the appellant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, state's attorney, and *Thomas M. DeLillo*, senior assistant

state's attorney, for the appellee (state).

*Opinion*

SHELDON, J. The defendant, Lin Qi Si, appeals from the judgment of conviction, rendered against him after a jury trial, on the charge of negligent homicide with a commercial motor vehicle in violation of General Statutes § 14-222a (b).[1] The defendant was tried on that charge under a long form information dated August 16, 2016, in which the state alleged that on December 5, 2012, he negligently operated a commercial motor vehicle at the intersection of Sandy Desert Road and Trading Cove Road on the premises of the Mohegan Sun Casino (casino) in Montville, and thereby caused the death of the decedent, Pui Ying Tam Li. On appeal, the defendant claims that the trial court erred by (1) failing to instruct the jury properly on the essential element of causation and (2) providing the jury with a copy of the jury charge during deliberations.[2] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On December 5, 2012, the defendant was working as a bus driver for the Travel Sun Bus Company. At approximately 12:15 p.m. on that day, he departed from Boston, Massachusetts with at least forty passengers and traveled to the casino in Montville, Connecticut. At or about 2:52 p.m., after dropping his passengers off at the casino and driving out of the bus parking lot, he stopped in the southbound lane of Trading Cove Road at a traffic light controlling its intersection with Sandy Desert Road. As Sandy Desert Road enters the intersection from the east, it has three westbound lanes and one large eastbound lane. The intersection is situated between the casino employee parking lot to the northwest and the Eagleview Employment Center to the southeast, where shuttle buses transport employees to and from the casino. While he was stopped at the light, the defendant saw the decedent and her coworker, Tung Lun Hom, cross Trading Cove Road in an easterly direction in the crosswalk directly in front of his bus. The two continued walking to the sidewalk on the corner to the defendant's left, then turned right toward the start of the southbound crosswalk across Sandy Desert Road. Before entering the crosswalk, Hom looked at the traffic light to his right, which controlled westbound traffic stopped on Sandy Desert Road, and saw that it was red. He did not look, however, at the signal on the southeast corner of the intersection controlling pedestrian traffic on the crosswalk itself. When he did not see any vehicles coming, he entered the crosswalk and began to cross Sandy Desert Road with the decedent close behind him.

Meanwhile, the defendant's traffic light on Trading Cove Road turned green. He looked left, right, and then back at the traffic light before him, and began to make a legal left turn into the eastbound lane of Sandy Desert Road. At the same time, Hom and the decedent had

walked southbound in the crosswalk, almost all the way across Sandy Desert Road, when Hom noticed the bus suddenly approaching them from behind. He immediately ran but fell down, and thus did not see what happened to the decedent. While making his turn, the defendant hit the decedent with his bus; she later died of "multiple blunt traumatic injuries." The defendant did not see the decedent until the moment the bus struck her.

A second eyewitness, Charles Trolan, was stopped at the traffic light at the same intersection on Sandy Desert Road, facing westbound in the lane closest to the center of the road. The decedent and Hom walked in front of his car as they crossed Sandy Desert Road in a southerly direction. Trolan saw the decedent fall to the ground but did not see what happened to her before she fell because he was looking past her, down the street to his left, for a parking spot. Because the decedent fell to Trolan's left, he reasoned that she was more than halfway across the street when the bus hit her.

A surveillance camera at the Eagleview Employment Center, on the southeast corner of the intersection, captured part of the incident on video. Hom and the decedent can be seen in the video crossing in front of the defendant's bus as it stood at the light on Trading Cove Road just seconds before the impact. No vehicles, other than the defendant's bus, drove through the intersection after they began to cross Trading Cove Road. A "brown patch" obscured part of the camera's view, so the video does not clearly show where they were located in the roadway when the defendant's bus began to turn, nor does it show where they were when the decedent was struck by the bus. Photographs of the scene reveal that after the impact, the bus came to a stop straddling the crosswalk in the eastbound lane of Sandy Desert Road. The beginning of a skid mark just behind the bus is also visible in the photographs.

Retired State Trooper James Foley, an expert in accident reconstruction, went to the scene at about 4:30 p.m. on the day of the accident to gather physical evidence, create a diagram of the scene, and ascertain the timing sequence of the pedestrian crosswalk signal. Based on the video, the location of the bus when it stopped, and the skid mark, he opined that the decedent was hit while she was in the crosswalk on the far side of Sandy Desert Road from where she had begun to cross it. The photographs also show the decedent's clothing, which had been cut away to facilitate emergency medical treatment at the place where she fell, lying in the roadway in front and to the right of the bus where it came to rest. Foley's original diagram of the scene was drawn to scale; however, the key on the diagram that indicates distances was enlarged after the diagram was created, so he could not be sure that using

the diagram to calculate distances would lead to accurate results.

State Trooper Jeffrey Rogers, the lead investigator on the case, determined that the pedestrian crosswalk signal controlling the crosswalk on the east side of the intersection was either flashing red or solid red when the decedent began to cross Sandy Desert Road at that location; either signal would have indicated to a pedestrian in the decedent's location that it was unsafe to cross the road at that time and place. An inspection of the bus revealed that it had no mechanical problems that could have contributed to the accident. December 5, 2012, was a cold, clear day.

The trial court held a charging conference in chambers and later summarized the contents of the conference on the record. The court then noted that defense counsel had requested that the jury be instructed that, "if the negligence of the decedent was the sole proximate cause, that that is, in fact, a defense . . . ." The court went on to say, "I did, in fact, point out [that] this sentence is a sentence that is in compliance with the law and is contained within the segment of my charge that describes the obligation of the state to prove beyond a reasonable doubt that the defendant was the proximate cause of the death. And I will, in fact, emphasize that by repeating that at the end of that paragraph."

In its charge, the court identified the four elements of negligence and gave the following instructions on the element of causation: "The third element is that the defendant's negligent operation of the motor vehicle was the proximate cause of . . . the death . . . . Proximate cause does not necessarily mean the last act [of] cause, or the act in point of time nearest to the death . . . . An act or omission to act is a proximate cause of death when it substantially and materially contributes, in a natural and continuous sequence, unbroken by an efficient, intervening cause, to the death . . . . When the result is a foreseeable and natural result of the defendant's conduct, the law considers the chain of legal causation unbroken and holds the defendant criminally responsible."

The court concluded its instructions on proximate causation by saying: "Keep in mind that any negligence on the part of the decedent . . . is irrelevant to your determination of the defendant's guilt or nonguilt of this charge. [The decedent's] reasonable or unreasonable conduct does not relieve the defendant from his duty to operate his motor vehicle in a careful and cautious manner. Remember that it is the state's obligation to prove the element that it was the defendant's negligent operation of a motor vehicle which caused the death of the decedent and not the negligence of the [decedent] which led directly to the death." The defendant challenges these last three sentences of the charge in this appeal.

After concluding its deliberations, the jury returned a verdict of guilty on the charge of negligent homicide with a commercial motor vehicle. The defendant was sentenced thereafter to six months' incarceration, with the execution of that sentence suspended, and two years of probation. This appeal followed.

As an initial matter, we note that defense counsel failed to submit a written request to charge on the element of causation pursuant to Practice Book § 42-16. "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of exception." Practice Book § 42-16. Even so, we conclude that counsel adequately stated his objection on the record before the jury charge and properly excepted to the charge after it was given. Furthermore, the state has not argued on appeal that the defendant failed to properly preserve this claim. We will, therefore, address the merits of the defendant's claim of instructional error.

I

The defendant claims that the court improperly instructed the jury because (1) it failed to instruct the jurors that it would be a complete defense to the charge of negligent homicide with a commercial motor vehicle that the decedent's negligence was the sole proximate cause of her own death, and (2) the jury charge was materially misleading with respect to the element of proximate causation. We conclude that the substance of the requested instruction was addressed in the charge. We further conclude that, although certain portions of the instructions misstated the applicable law, the charge as a whole actually heightened the state's burden of proof on the element of causation to the benefit of the defendant. Therefore, any instructional error was harmless.

"We begin with the well established standard of review governing claims of instructional impropriety. [I]ndividual jury instructions should not be judged in artificial isolation, but must be viewed in the context of the overall charge. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Thus, [t]he whole charge must be considered from the standpoint of its effect on the [jurors] in guiding them to the proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . Accordingly, [i]n reviewing a constitutional challenge to the trial court's instruction, we must consider the jury charge as a whole to determine whether it is reasonably

possible that the instruction misled the jury. . . . In other words, we must consider whether the instructions [as a whole] are sufficiently correct in law, adapted to the issues and ample for the guidance of the jury.'' (Internal quotation marks omitted.) *State* v. *Hampton*, 293 Conn. 435, 452–53, 988 A.2d 167 (2009).

"A jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Davis*, 255 Conn. 782, 794, 772 A.2d 559 (2001).

"[N]egligent homicide with a motor vehicle is a motor vehicle violation and not an offense within the meaning of General Statutes § 53a-24. We first note that the degree of negligence prohibited by this statute is equivalent to the ordinary civil standard of negligence, namely, the failure to use due care." (Internal quotation marks omitted.) *State* v. *Kluttz*, 9 Conn. App. 686, 694–95, 521 A.2d 178 (1987).

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury . . . ." (Internal quotation marks omitted.) *Giacalone* v. *Housing Authority*, 306 Conn. 399, 418, 51 A.3d 352 (2012) (*Zarella, J.*, concurring). In a criminal case, "the state must prove every fact necessary to constitute the crime with which [the defendant] is charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Salz*, 226 Conn. 20, 28, 627 A.2d 862 (1993).

The first two elements of negligent homicide with a commercial motor vehicle are that the defendant had a duty to use due care in operating a commercial motor vehicle and breached that duty. See *Giacalone* v. *Housing Authority*, supra, 306 Conn. 419 (*Zarella, J.*, concurring). "The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised. . . . [T]he test is, would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result . . . ." (Internal quotation marks omitted.) Id. "A defendant's duty and breach of duty is measured by a reasonable care standard, which is the care [that] a reasonably prudent person would use under the circumstances." (Internal quotation marks omitted.) *Kumah* v. *Brown*, 160 Conn. App. 798, 804, 126 A.3d 598, cert. denied, 320 Conn. 908, 128 A.3d 953 (2015).

The state must next prove that the defendant's breach of his duty of care caused the decedent's death. "[I]n order for legal causation to exist in a criminal prosecution, the state must prove beyond a reasonable doubt

that the defendant was both the cause in fact, or actual cause, as well as the proximate cause of the victim's [death]." (Internal quotation marks omitted.) *State* v. *Collins*, 100 Conn. App. 833, 843, 919 A.2d 1087, cert. denied, 284 Conn. 916, 931 A.2d 937 (2007). "Proximate cause in the criminal law does not necessarily mean the last act of cause, or the act in point of time nearest to death. The concept of proximate cause incorporates the notion that an accused may be charged with a criminal offense even though his acts were not the immediate cause of death. An act or omission to act is the proximate cause of death when it substantially and materially contributes, in a natural and continuous sequence, unbroken by an efficient, intervening cause, to the resulting death."[3] (Internal quotation marks omitted.) *State* v. *Spates*, 176 Conn. 227, 233–34, 405 A.2d 656 (1978), cert. denied, 440 U.S. 922, 99 S. Ct. 1248, 59 L. Ed. 2d 475 (1979).

"[A] jury instruction with respect to proximate cause must contain, at a minimum, the following elements: (1) an indication that the defendant's conduct must contribute substantially and materially, in a direct manner, to the victim's injuries; and (2) an indication that the defendant's conduct cannot have been superseded by an efficient, intervening cause that produced the injuries." *State* v. *Leroy*, 232 Conn. 1, 13, 653 A.2d 161 (1995).

"[C]ontributory negligence is not a defense in a . . . [prosecution for] negligent homicide [with a motor vehicle] . . . unless such negligence on the part of the decedent is found to be the sole proximate cause of [the] death." *State* v. *Scribner*, 72 Conn. App. 736, 741, 805 A.2d 812 (2002). "If it is shown that the sole proximate cause of death is the decedent's own negligence rather than that of the defendant, there can be no conviction . . . . If, however, the defendant's negligence was the cause of the decedent's death, the defendant would be responsible under the statute whether or not the decedent's failure to use due care contributed to his injuries, since contributory negligence is no defense in such a case." (Citation omitted.) *State* v. *Pope*, 6 Conn. Cir. Ct. 712, 714, 313 A.2d 84 (1972).

The complete defense of sole proximate cause to the charge of negligent homicide with a commercial motor vehicle is available only in circumstances where some act or omission, other than the defendant's negligence, is shown to have been the only conduct that contributed substantially and materially to the decedent's death. Proof that the decedent was the sole proximate cause of her own death is necessarily inconsistent with the proof required for conviction, that the defendant's negligence was a proximate cause of the death. In the event such a sole proximate cause is proved, the state will have failed to prove an essential element of the charge and the defendant must be found not guilty. Where, by

the same token, a defendant's negligence is proved to have been a proximate cause of the decedent's death notwithstanding the causative contribution of other concurrent causes to that death, then proof of such proximate causation necessarily disproves that any other cause was the sole proximate cause of the death. With these principles in mind, we turn to the charge as given in the present case.

The defendant first claims that the court improperly instructed the jury because it failed to give an instruction that it would be a complete defense to the charge of negligent homicide with a commercial motor vehicle that the decedent's negligence was the sole proximate cause of her own death. We conclude that the trial court did not err because, although it did not give the requested instruction verbatim, it included the substance of such a charge in its instruction. Before the court gave the challenged instructions, it correctly charged the jury that proximate cause is an essential element of negligent homicide with a commercial motor vehicle that the state must prove beyond a reasonable doubt by including the required language for an adequate instruction on proximate causation from *State* v. *Leroy*, supra, 232 Conn. 13. In doing so, the court effectively instructed the jury that the state must disprove the defense of sole proximate cause because proof that the defendant's negligence proximately caused the decedent's death is necessarily inconsistent with any claim that some other, concurrent cause was the sole proximate cause of the death.

The defendant also claims that the jury charge was misleading. Specifically, the defendant argues that the instructions on proximate causation could have led the jury to disregard the conduct of the decedent entirely and, thus, to ignore the possibility that she was the sole proximate cause of her own death. Although a portion of the instructions misstated the applicable law, we conclude that the instructions actually heightened the state's burden of proof to the benefit of the defendant so that no injustice to the defendant resulted. We further conclude that the charge as a whole did not lead the jury to disregard any fact or set of facts that might have been found to raise reasonable doubt as to the defendant's guilt.

The first challenged sentence at the end of the court's instructions on proximate causation was as follows: "Keep in mind that any negligence on the part of the decedent . . . is irrelevant to your determination of the defendant's guilt or nonguilt of this charge." This instruction is correct if read literally; the defendant is, in fact, legally responsible for his own negligence regardless of whether the decedent's conduct was also negligent. The concern raised by this instruction, however, is that the jury might interpret the word "negligence" to mean conduct and, thus, might be led to

disregard facts suggesting that the decedent's negligent conduct was the sole proximate cause of her own death. The conduct of the decedent is entirely relevant to the defendant's guilt in the sense that it is a critical part of the circumstances surrounding the defendant's alleged negligence, which are obviously necessary for the jury to consider in determining whether the state has proved the essential elements of its case against him. If the decedent's negligent conduct contributed so substantially and materially to her own death as to reduce the causative contribution of the defendant's negligence to the point that it was not substantial or material, then the defendant could not be convicted of negligent homicide with a commercial motor vehicle because his negligence could not be found to have been a proximate cause of the decedent's death.

The second challenged sentence in the causation instructions reads as follows: "[The decedent's] reasonable or unreasonable conduct does not relieve the defendant from his duty to operate his motor vehicle in a careful and cautious manner." This instruction is a correct statement of law. See *Wagner* v. *Clark Equipment Co.*, 243 Conn. 168, 183, 700 A.2d 38 (1997).

The final challenged sentence in the causation instructions reads as follows: "Remember that it is the state's obligation to prove the element that it was the defendant's negligent operation of a motor vehicle which caused the death of the decedent and not the negligence of the [decedent] which led directly to the death." If the court had instructed the jury that it was the state's obligation to prove that the defendant's negligent operation of a commercial motor vehicle proximately caused the death of the decedent and stopped there, its instruction would have been completely correct. Instead, however, the court erred when it went on to state that it was also the state's obligation to prove that it was "not the negligence of the [decedent] which led directly to the death."

Although the court's stated purpose in so instructing the jury was to emphasize the complete defense of sole proximate cause, this language overstated the state's burden of proof in two ways. First, the court's instruction suggested that the state must prove that the defendant's negligence was the only proximate cause of the decedent's death. Second, it suggested, more particularly, that the state must disprove that the decedent's negligence was a proximate cause of her own death. Neither proposition is legally correct.

To begin with, it is well established that a cause can be a proximate cause of a result or consequence even if it is not the only cause of that result or consequence. See *Coburn* v. *Lenox Homes, Inc.*, 186 Conn. 370, 383, 441 A.2d 620 (1982). Each of several concurrent causes of a death can thus be a proximate cause of the death if it contributed substantially and materially to producing

that result. As long as a particular act of negligence by a defendant is proved to have been a substantial factor in causing a death by contributing materially to producing it, the state can meet its burden of proof as to proximate causation without disproving that any other cause was also a proximate cause of the death. See *Rawls* v. *Progressive Northern Ins. Co.*, 310 Conn. 768, 777, 83 A.3d 576 (2014). There is, moreover, no specific rule requiring the state to disprove that the decedent's own negligence was a proximate cause of her own death, for even if such negligence was a proximate cause, that fact, as previously noted, would not affect the defendant's guilt unless such negligence was shown to have been the sole proximate cause of the death. Here, then, by requiring the state to disprove that the decedent's negligence was a proximate cause of her own death, the court required the state to prove more than the law required of it to establish the element of causation. The state's burden of proof was in no way diminished by these instructions; instead, the charge doubly enhanced the burden that the state had to meet to establish proximate causation and, therefore, caused the defendant no harm or resulting injustice.

Furthermore, we must observe that there is no evidence in the record supporting a finding that the instructions guided the jury to discount any fact or set of facts inconsistent with the defendant's guilt. The evidence presented did not establish that the decedent's negligent conduct contributed so substantially and materially to her own death that the defendant could not have been a proximate cause of the death. There was, for example, no evidence that the decedent darted into the street from a place where she could not have been seen or her actions could not have been anticipated by a reasonably prudent bus driver exercising due care under the circumstances. Instead, overwhelming evidence was presented that the decedent was established in the roadway, having walked in the crosswalk, in front of at least three lanes of westbound traffic, while the defendant was turning his bus in her direction. Two eyewitnesses testified that she was more than halfway across Sandy Desert Road when the bus struck her. An expert opined that she was in the crosswalk at the time of impact and was closer to her destination across the roadway than to the point where she had entered the crosswalk. Photographs of the scene supported his opinion. There were, moreover, no external factors documented in the record, such as other vehicles, inclement weather, or mechanical problems with the bus that might have been found to negate the defendant's negligence or to reduce its causative contribution to the decedent's death to the point that it was not a proximate cause of the death. It was a clear day and the defendant's vision was unobstructed. The defendant admitted that he looked at the light in front of him, not at the crosswalk to his left, as he began to make his fatal left turn.

The most persuasive fact in favor of the defendant's trial theory was the uncontested evidence that the decedent crossed the street against the pedestrian crosswalk signal. However, this fact alone was not so powerful as to reduce the defendant's causative contribution to the decedent's death to the point that it was no longer substantial or material. Even if the jury found that the decedent crossed the street unlawfully, that would at most have suggested that her negligence contributed substantially and materially to, and thus proximately caused her death, not that it was the sole proximate cause of her death. The defendant failed to see the decedent in the roadway with no evidence in the record as to why, in the exercise of reasonable care, he could not have done so in time to avoid striking her when he made his turn. Therefore, we conclude that the jury's finding that the defendant's negligence was a proximate cause of the decedent's death was supported by overwhelming evidence. For that reason as well, the court's instructional errors that increased the state's burden of proof as to causation had no prejudicial impact on the jury's verdict.

## II

The defendant's next claim on appeal is that the trial court erred by providing the jury with a copy of the jury charge during deliberations. We conclude that this is a permissible practice and within the discretion of the trial court. "[T]he practice of submitting written instructions to the jury is permissible . . . ." *State* v. *Jennings*, 216 Conn. 647, 665, 583 A.2d 915 (1990). Moreover, Practice Book § 42-23 (b) states in relevant part: "The judicial authority may, in its discretion, submit to the jury . . . (2) [a] copy or tape recording of the judicial authority's instructions to the jury . . . ." Therefore, we conclude that the court's decision to provide the jury with a copy of the jury charge during deliberations was within the discretion of the trial court, and there was no error.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 14-222a (b) provides: "Any person who, in consequence of the negligent operation of a commercial motor vehicle, causes the death of another person shall be fined not more than two thousand five hundred dollars or imprisoned not more than six months, or both."

[2] The defendant also claims that a decedent's contributory negligence should be considered by the jury when the basis for the prosecution is common-law negligence. We conclude that this claim was abandoned and do not reach the claim on the merits. "The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial." Practice Book § 60-5. "We are not required to review issues that have been improperly presented to this court through an inadequate brief . . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *State* v. *Fowler*, 178 Conn. App. 332, 345, 175 A.3d 76 (2017), cert. denied, 327 Conn. 999, 176 A.3d 556 (2018).

In our review of the record, this court could find only one reference to contributory negligence by defense counsel, as he noted, "that's an issue for another day." In his brief, the defendant's argument on the issue is two

paragraphs long with no references to the law or facts in the record. Because defense counsel did not request that the trial court give an instruction on contributory negligence, did not take exception to the lack of such instruction and did not brief the issue beyond a bare assertion, we conclude that he has abandoned this claim.

[3] A useful, alternative way of characterizing conduct that is an actual cause of the result but is not a proximate cause, is to say that the conduct has been reduced to the point of triviality or inconsequence. "Remote or trivial [actual] causes are generally rejected because the determination of the responsibility for another's injury is much too important to be distracted by explorations for obscure consequences or inconsequential causes." (Internal quotation marks omitted.) *Doe* v. *Manheimer*, 212 Conn. 748, 758, 563 A.2d 699 (1989), overruled in part on other grounds by *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 608, 662 A.2d 753 (1995).

_____